**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | CIVIL ACTION |
| SHIN DA ENTERPRISES INC, 446-50 N. 6th ST | : | |
| LLC, and LIJIAN REN | : | NO._____ |
| | : | |
| Plaintiffs | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| WEI XIANG YONG a/k/a JOHN WEI, JIAN MEI | : | |
| HE, UIG CONSTRUCTION, LLC, PA RIDGE | : | |
| ASSOCIATES, WEI'S PROPERTIES, INC., | : | |
| REDEVELOPMENT CONSULTANTS, LLC, | : | |
| YING NAN GAI, G&Y CONTRACTOR INC. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiffs, Shin Da Enterprises Inc., 446-50 N. 6th ST LLC, and Lijian Ren, by and through their undersigned counsel, bring this civil action against Defendants, Wei Xiang Yong a/k/a John Wei, Jian Mei He, UIG Construction, LLC, PA Ridge Associates, Wei's Properties, Inc., Redevelopment Consultants, LLC, Ying Nan Gai, and G&Y Contractor Inc. and aver as follows:

## JURISDICTION AND VENUE

1.      This is a civil action arising out of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*  This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964, in that the claims arise under the laws of the United States.

2.      Venue is proper in this District under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(a), in that numerous of the acts, practices, and events giving rise to the claims alleged in this Complaint occurred in this District, and all Defendants maintain their principal residence and/or place of business in this District.

## THE PARTIES

3.      Plaintiff, Shin Da Enterprises Inc. ("Shin Da"), is a Pennsylvania limited liability company with an address of 1100-02 Spring Garden Street, Philadelphia, PA 19123.

4.      Plaintiff, 446-50 N. 6th St LLC ("446 LLC"), is a Pennsylvania limited liability company with an address of 1424 S. 8th Street, Philadelphia, Pennsylvania 19147.

5.      Lijian Ren ("Mr. Ren") is an adult individual with a residence at 1424 South 8th Street, Philadelphia, Pennsylvania 19147.

6.      Mr. Ren is the President and owner of Shin Da and the sole member of 446 LLC.

7.      Defendant Wei Xiang Yong (a/k/a John Wei) is an individual with a residence or place of business located at 311 N. 11th Street, Philadelphia, Pennsylvania 19107.

8.      Defendant Jian Mei He (a/k/a Mika He) is an individual with a residence or place of business located at 311 N. 11th Street, Philadelphia, Pennsylvania 19107.

9.      John Wei and Mika He are married.

10.     Defendant UIG Construction, LLC ("UIG") is a Pennsylvania limited liability company with an office or place of business located at 311 N. 11th Street, Philadelphia, Pennsylvania 19107.

11.     Defendant PA Ridge Associates ("PA Ridge") is a Pennsylvania limited partnership with an office or place of business located at 525 N. 11th Street, Philadelphia, Pennsylvania 19123.

12.     Defendant Wei's Properties, Inc. ("Wei's Properties") is a Pennsylvania corporation with an office or place of business located at 311 N. 11th Street, Philadelphia, Pennsylvania 19107.

13.     Defendant Redevelopment Consultants, LLC ("Redevelopment Consultants") is a Pennsylvania limited liability company with an office or place of business located at 311 N. 11th Street, Philadelphia, Pennsylvania 19107.

14.     Defendant Ying Nan Gai is an individual with an office or place of business located at 1135 Spring Garden Street, Philadelphia, Pennsylvania 19123.

15.     Defendant G&Y Contractor, Inc. ("G&Y") is a Pennsylvania corporation with an office or place of business located at 1135 Spring Garden Street, Philadelphia, Pennsylvania 19123.

16.     John Wei owns and controls UIG, PA Ridge, and Wei's Properties.

17.     Although Mika He gave sworn testimony at a deposition that she has no ownership interest in PA Ridge, she and John Wei have submitted paperwork to a financial institution in connection with the loan discussed below swearing that Mika He is a fifty-percent (50%) owner of PA Ridge.

18.     Mika He is the owner of record of Redevelopment Consultants, but, as shown herein, Redevelopment Consultants is used by John Wei and Mika He as a sham entity for purposes of carrying out the racketeering activities outlined in this Complaint.

19.     Ying Nan Gai purports to be the owner of G&Y, however, it is believed that John Wei is really the individual behind the entity and that the entity is merely used as another shell company for John Wei to engage in the fraudulent conduct set forth herein.

## FACTUAL BACKGROUND

### A.      Nature of the Action

20.     This case involves a Chinese immigrant, Mr. Ren, who, despite not knowing the English language and having little formal education, through years of tireless hard work has found

himself successful in a number of business adventures, including in the sale and installation of cabinets and countertops as well as real estate holdings in the Philadelphia Chinatown community.

21.     Mr. Ren sought to do business with and help a fellow Chinese immigrant and businessman, John Wei, only to have his trust betrayed and to find himself a victim of a larger racketeering scheme operated by John Wei, who sought to extort and steal from Mr. Ren, his businesses, and others to keep their criminal enterprise afloat.

22.     Unbeknownst to Mr. Ren at the time, John Wei, with the assistance and participation of his wife, Mika He, and at times others, including Ying Nan Gai and G&Y, was engaged in a Ponzi-like scheme involving numerous parcels of real property in the Philadelphia area and countless sham entities that he used to inflate construction loans to ever increasing amounts on each successive project in which he engaged.

23.     Despite having many properties producing significant sources of income and bank loans to cover the cost of materials and labor provided by Shin Da, John Wei's fraudulent scheme began to catch up to him and he was allegedly unable to pay Shin Da.

24.     Rather than coming clean and trying to make things right, John Wei, as the head of a racketeering enterprise, engaged in further levels of fraudulent and desperate conduct in an effort to not only avoid paying Shin Da for the hundreds of thousands of dollars' worth of materials and labor it provided, but also to extort millions of dollars from the Plaintiffs.

**B.     Shin Da's Work as a Subcontractor**

25.     In November 2015, PA Ridge purchased the real property located at 525 N. 11th Street, Philadelphia, Pennsylvania 19123 (the "525 Property").

26.     PA Ridge endeavored to renovate the existing structure on the Property into an approximately one-hundred (100) unit apartment building (the "Project").

4

27.     On or about November 30, 2015, PA Ridge and UIG, by and through John Wei, entered into a construction contract (the "GC Contract") for UIG to serve as the general contractor for the Project.  A copy of the GC Contract is attached hereto as Exhibit 1.

28.     The GC Contract was initially for $18 million.

29.     The substantial completion date for the Project was initially November 30, 2017, but was quickly changed to December 31, 2017.

30.     On February 5, 2018, over a month *after* UIG was to have completed the Project, the substantial completion date was further extended to June 30, 2018, and the amount of the GC Contract was increased to almost $25 million.

31.     PA Ridge was financing the Project through a loan obtained from Parke Bank for $18 million or more.

32.     As is set forth below, John Wei, UIG, and PA Ridge hid from Parke Bank the fact that they would use sham affiliated entities, contracts, and invoices to fraudulently increase the costs of construction and therefore the amount of the loan.

33.     On or about August 18, 2018—seven (7) weeks *after* the revised substantial completion date—UIG entered into a subcontract with Shin Da (the "Subcontract") for Shin Da to provide certain construction materials and services as a subcontractor for the Project ("Shin Da's Work").  A true and correct copy of the Subcontract as originally transcribed in Chinese is attached hereto as Exhibit 2.  A true and correct copy of the Subcontract interpreted into English is attached hereto as Exhibit 3.

34.     Mr. Ren does not read, speak, or write any English, so the Subcontract was written in Chinese.

35.     John Wei claims to know "very little" English despite there being significant documentation of him frequently conducting business in English.

36.     The Subcontract was for Shin Da to provide and install kitchen and bathroom cabinets, countertops, and stone water barriers in ninety-three (93) apartment units at a price of $370,000.  Ex. 3.

37.     UIG and Shin Da later orally amended the Subcontract, at UIG's request, for Shin Da to provide and install additional materials such as sinks, cabinet doorknobs, and plumbing materials, bringing the total amount Shin Da was to be paid to $532,258.76.

38.     Shin Da was to be paid $20,000 upon execution of the Contract, $30,000 on September 5, 2018, $40,000 upon the completion of each of the seven (7) floors ("Progress Payments"), and the remaining balance upon completion of the entire Subcontract.  Ex. 3, ¶ 3.

39.     By late September 2018, Shin Da had provided the materials and completed installation on a number of floors and was owed $240,000.

40.     Shin Da obtained the cabinets and countertops from manufacturers in China which were shipped to Shin Da through international trade.

41.     The cabinets and countertops arrived in the United States at various ports of entry, including Philadelphia, New York, and New Jersey and were delivered to Shin Da via routes of interstate commerce.

42.     Other than $20,000 paid at the signing of the Subcontract, however, UIG failed to pay Shin Da any of the amounts it was owed.

43.     When Shin Da demanded the $240,000 that was then due—comprised of the $30,000 that was to be paid on September 5, 2018 and the Progress Payments owed at that time—

John Wei stated that he did not have any funds with which to pay Plaintiffs despite PA Ridge obtaining a loan for at least $18 million to pay for work on the Project, including Shin Da's Work.

C.      The 6th Street Property

44.     Instead of making a cash payment to Shin Da, John Wei offered to sell Mr. Ren a property located at 446-50 N. 6th Street, Philadelphia, PA 19123 (the "6th Street Property"), which John Wei represented he owned, and to "credit" or "offset" some of the $240,000 UIG and John Wei owed to Shin Da under the Subcontract against the purchase price of the 6th Street Property.

45.     Mr. Ren and John Wei then reached an agreement on the terms of a deal for the sale of the 6th Street Property and Mr. Ren formed 446 LLC as the intended purchaser to acquire the 6th Street Property.

46.     Although Mr. Ren wanted to have a lawyer draft the paperwork, John Wei insisted on having Mika He draft an Agreement of Sale (the "AOS") for the sale, claiming that would save on legal fees.

47.     Although Mr. Ren does not read or speak English, Mika He, at John Wei's direction, drafted the AOS in English.  A copy of the AOS is attached hereto as Exhibit 4.

48.     Because Mr. Ren trusted John Wei as a fellow Chinese businessman, Mr. Ren executed the AOS on behalf of 446 LLC on September 21, 2018.

49.     The purchase price in the AOS was $2,500,000 and Mr. Ren paid a $50,000 deposit simultaneously with the execution of the AOS on behalf of 446 LLC.  Ex. 4.

50.     On the same day that the AOS was executed, a Supplementary Buy and Sale [*sic*] Agreement of Real Estate ("Supplemental Agreement"), which supplemented the AOS, was executed.  A copy of the Supplemental Agreement is attached hereto as Exhibit 5.

51.     Unlike the AOS, the Supplemental Agreement was written in Chinese.  Ex. 5.  A copy of the English translation of the Supplemental Agreement is attached hereto as Exhibit 6.

52.     The Supplemental Agreement was executed by Mr. Ren on behalf of 446 LLC as the buyer and by John Wei on behalf of JBZ Realty LLC and Wei's Properties, jointly, as the seller, which was consistent with John Wei's representations that he owned the 6th Street Property.

53.     Mr. Ren would later find out that included in the documents that John Wei had him sign on September 21, 2018 to memorialize the sale of the 6th Street Property was a document titled a "Finder's Fee Agreement."  A copy of the Finder's Fee Agreement is attached hereto as Exhibit 7.

54.     The Finder's Fee Agreement was again drafted by Mika He and again in English.

55.     The Finder's Fee Agreement purports to require 446 LLC to pay Wei's Properties a $700,000 "Finder's Fee" in connection with the sale of the 6th Street Property.

56.     John Wei did not inform Mr. Ren of the "Finder's Fee Agreement" or explain the document's contents to Mr. Ren, nor was there ever any discussion of a "finder's fee" given that John Wei told Mr. Ren that he owned the 6th Street Property.

57.     Neither John Wei nor Wei's Properties is licensed or registered as real estate brokers or salespersons.

58.     Pennsylvania's Real Estate Licensing and Registration Act makes it unlawful for anyone other than a registered real estate broker or salesperson to receive a commission or "finder's fee" on the sale of real estate.  63 P.S. §§ 455.301, 455.302.

59.     The Finder's Fee Agreement is illegal and fraudulent.

60.     On September 28, 2018, Mr. Ren gave John Wei an additional $200,000 payment/credit that was supposed to be towards the purchase of the 6th Street Property.

61.     Mr. Ren and 446 LLC learned later, however, that Wei's Properties and John Wei do not have any ownership interest in the 6th Street Property.

62.     Rather, the 6th Street Property is owned by JBZ Realty LLC ("JBZ Realty")—an entity owned and controlled by John Wei's brother, Xiang Feng Wei.

63.     Although the $200,000 payment/credit made on September 28, 2018 was intended to be a second deposit on the AOS, JBZ Realty contends that it never received the funds from John Wei, and it disclaimed any knowledge of the payment.

64.     Instead, John Wei and Wei's Properties claimed that the $200,000 was a payment towards the $700,000 alleged "Finder's Fee", despite the alleged "Finder's Fee" being illegal and the sale of the 6th Street Property never having been consummated such that the Finder's Fee could be due, even if it were a legal agreement.

65.     In the meantime, and in furtherance of the AOS, 446 LLC began applying for financing from various lenders, but John Wei insisted that 446 LLC obtain financing through Wang Xiaoning and Wang's company Paramount Mortgage Resources, Inc. ("Paramount"), or else he would not sell the 6th Street Property to 446 LLC in accordance with the AOS.

66.     John Wei has a relationship with Wang Xiaoning and Paramount, which is why John Wei insisted that 446 LLC engage Wang Xiaoning and Paramount's services.

67.     446 LLC applied for financing through Paramount in Philadelphia, Pennsylvania on or about November 25, 2018, and paid a $7,500 application fee.

68.     Later, Wang Xiaoning told Mr. Ren that the loan had been approved and that 446 LLC would be able to close on the 6th Street Property in early January 2019.

69.     The loan applied for by 446 LLC and which was approved was to be issued by Parke Bank, the same bank that gave PA Ridge an at least $18 million loan for the Project.

70.    Parke Bank is a Federal Deposit Insurance Corporation insured financial institution with its headquarters located in New Jersey.

71.    On or about January 8, 2019, Mika He, acting at the direction of John Wei and on behalf of Wei's Properties, sent an email to Wang Xiaoning enclosing the fraudulent and illegal Finder's Fee Agreement and instructing him to include the "remaining" $500,000 allegedly due to John Wei under that document on the HUD-1 form for the closing.  A copy of the email is attached hereto as Exhibit 8.

72.    The email was transmitted through internet servers in interstate commerce.

73.    Following John Wei's direction, Wang Xiaoning refused to disburse the loan proceeds to 446 LLC unless 446 LLC and Mr. Ren paid John Wei the illegal $500,000 Finder's Fee thereby preventing 446 LLC from being able to purchase the 6th Street Property.

74.    The transmission of the fraudulent and illegal Finder's Fee Agreement constitutes a RICO predicate act of wire fraud in violation of 18 U.S.C. § 1343.

**D.    UIG Kicks Shin Da Off the Project and John Wei Threatens Mr. Ren**

75.    After 446 LLC refused to pay Wei's Properties the illegal and fraudulent Finder's Fee, John Wei kicked Shin Da off the Project, refused to allow Shin Da to finish Shin Da's Work, and refused to pay Shin Da for the materials and labor provided.

76.    Present at an in-person confrontation in January 2019 at the 525 Property were Mr. Ren, John Wei, and Ying Nan Gai.

77.    Ying Nan Gai is a friend of John Wei's who traveled from Maryland to Philadelphia to perform various work at the Project.

78.     Mr. Ren sought to recover thousands of dollars' worth of his tools that were inside the 525 Property, but Ying Nan Gai, at John Wei's direction, threatened to beat Mr. Ren with a metal pole should Mr. Ren attempt to go into the building.

79.     The threat of physical violence against Mr. Ren and the act of traveling across state lines to participate in racketeering activity constitute RICO predicate acts under 18 U.S.C. § 1951 as well as 18 U.S.C. § 1961(a), as is the thefts constitute the state crimes of robbery and extortion pursuant to 18 Pa.C.S.A. § 3701(a), 18 Pa.C.S.A. § 3921(a), and 18 Pa.C.S.A. § 3923(a).

80.     John Wei, UIG, and PA Ridge did not return Mr. Ren's tools or any of the cabinets, countertops, and other materials that Shin Da had provided and were stored at the 525 Property but not yet installed.

81.     John Wei, UIG, and PA Ridge have, however, taken at least some of the cabinets and countertops that they did not pay Shin Da for and installed them at the 525 Property, which John Wei readily admitted during his deposition.  A copy of excerpts of John Wei's deposition is attached hereto as Exhibit 9, at 151:152:5.

82.     The theft of Mr. Ren and Shin Da's property constitutes RICO predicate acts under 18 U.S.C. § 1951 as well as 18 U.S.C. § 1961(a) as the thefts constitute the state crimes of robbery and extortion pursuant to 18 Pa.C.S.A. § 3701(a), 18 Pa.C.S.A. § 3921(a), and 18 Pa.C.S.A. § 3923(a).

83.     John Wei informed Mr. Ren that because 446 LLC refused to pay the illegal and fraudulent Finder's Fee to Wei's Properties, UIG would not pay Shin Da for Shin Da's Work.

84.     Around January 2019, John Wei also threatened Mr. Ren that if Mr. Ren or Shin Da sought to go to the authorities or to file any sort of legal proceeding to recover any of the amounts owed by John Wei and his entities, John Wei would have his friends who are building

11

inspectors draft fraudulent documents proclaiming Shin Da's Work to be deficient, UIG would sue Shin Da, and Shin Da would end up owing UIG hundreds of thousands, or even millions, of dollars in addition to not getting paid for any of Shin Da's Work.

85.     The threats of false legal claims and intimidation to not pursue legal claims constitute RICO predicate acts of tampering with witnesses pursuant to 18 U.S.C. § 1512.

**E.      The State Court Litigation and Fraudulent Conduct**

86.     In May 2019, Shin Da's counsel sent a notice of intent to file a mechanic's lien against the 525 Property to PA Ridge.

87.     John Wei quickly made good on his threats and, before Shin Da could file the mechanic's lien, UIG filed a lawsuit in the Philadelphia Court of Common Pleas (the "State Court") against Shin Da proclaiming Shin Da's Work to have been so deficient as to be completely unusable and sought hundreds of thousands of dollars in damages to correct the work despite having only paid Shin Da $20,000 for the cabinets and installation.

88.     Despite those claims, PA Ridge marketed the apartments in the 525 Property for rent online using pictures of Shin Da's Work.

89.     Making good on another threat, John Wei and UIG submitted to the State Court an "Inspection Report" from an entity called Construction Monitors that proclaimed various deficiencies in Shin Da's Work.  A copy of the Inspection Report is attached hereto as Exhibit 10.

90.     The Inspection Report was transmitted to Shin Da and to the State Court via email and electronic filing means.

91.     Along with the Inspection Report, UIG and John Wei transmitted to Shin Da via email hundreds of photographs allegedly taken by Construction Monitors to purportedly show the deficiencies in Shin Da's work.

92.     The Inspection Report is known to contain fraudulent statements, however.

93.     For instance, the Inspection Report contains photographs of one of the apartment units with cabinets installed by Shin Da, but no countertops, and proclaims that it "[w]ould be impossible to install appliances correctly with this [c]abinet [i]nstallation." Ex. 10, pg. 4.

94.     Yet, Construction Monitors produced other pictures of *those same units* with countertops installed and no changes in the cabinets and proclaimed the pictures to show deficiencies in Shin Da's Work.  A copy of one such picture is attached hereto as Exhibit 11.

95.     A representative of LN Flooring Corp. ("LN Flooring") testified under oath that LN Flooring installed the countertops, that there were no problems with the cabinet installation whatsoever, no modifications were made to the cabinets installed by Shin Da, and that appliances could fit.

96.     The different pictures were obviously taken at different times and some even *after* LN Flooring installed countertops.

97.     Yet, John Wei, UIG, and PA Ridge transmitted all of the pictures in support of the putative claims, proclaiming them to show deficiencies in Shin Da's Work despite there being no such deficiencies and the pictures showing the work of other contractors.

98.     The Inspection Report and pictures were sent via electronic means using internet servers in interstate commerce.

99.     The transmission of the Inspection Report and pictures constitutes a RICO predicate act of wire fraud pursuant to 18 U.S.C. § 1343.

100.    John Wei, UIG, and PA Ridge also transmitted to Shin Da via email and the State Court via electronic filing invoices of LN Flooring and G&Y which UIG sought to recoup as "damages" from Shin Da, both purporting to have provided and installed some of the exact same

materials.  A copy of LN Flooring's invoices is attached hereto as Exhibit 12.  A copy of G&Y's invoices is attached hereto as Exhibit 13.

101.    In other words, at least one set of invoices is fraudulent and UIG's and John Wei's claims to recoup the amounts on both sets of invoices was fraudulent.

102.    LN Floorings invoices also included charges for cabinets for the 7th Floor of the 525 Property, even though Shin Da had already provided and installed those cabinets and LN Flooring testified that it in fact did *not* provide the cabinets as set forth in the invoices.

103.    Ying Nan Gai, the purported owner of G&Y and the individual who threatened to beat Mr. Ren with a metal pole, testified that G&Y's invoices did not actually reflect work that was performed, but rather were fabricated to justify payments made to G&Y by UIG.  A copy of Ying Nan Gai's deposition transcript is attached hereto as Exhibit 14, at, e.g., 42:4-44:14.

104.    Ying Nan Gai informed Mr. Ren that John Wei owed him approximately $110,000 for various plumbing and electrical work he had performed at the Project.

105.    G&Y did not perform the work set forth in its invoices, but rather the invoices were fabricated as a means of attempting to ultimately have Shin Da pay the $110,000 that John Wei owed Ying Nan Gai for the plumbing and electrical work he performed at the Project.

106.    The fraudulent LN Flooring and G&Y invoices were created at the direction of John Wei on behalf of UIG and PA Ridge so as to inflate the amount of the construction costs for purposes of obtaining a larger loan and to extort money from Shin Da.

107.    The invoices are also believed to have been transmitted to Parke Bank via mail or electronic means in furtherance of the scheme to inflate the amount of construction costs and to obtain a larger construction loan for the Project.

14

108.    The transmission of the LN Flooring and G&Y invoices constitutes RICO predicate acts of bank fraud, wire fraud, and/or mail fraud pursuant to 18 U.S.C. § 1344, 18 U.S.C. § 1341, and 18 U.S.C. § 1343.

**F.    Further Fraudulent Invoices and Contracts**

109.    John Wei, as the head of the racketeering enterprise, inflates the costs of his various real estate construction projects by using a number of shell companies so as to increase the amounts of loans he is able to obtain, and he has done so for many years, dating back to before PA Ridge acquired the 525 Property in 2015.

110.    John Wei also routinely commits tax fraud by paying workers reduced rates in cash and under reporting the wages he pays.

111.    Plaintiffs would find this out, and that they had become caught in the web of John Wei's racketeering enterprise, via the litigation in the State Court.

112.    In March 2021, John Wei, UIG, and PA Ridge amended their claims in the State Court to include an allegation that Shin Da's allegedly deficient work caused the Project to be substantially delayed which resulted in PA Ridge's incurring at least $621,000 in loses via a loan extension payment and excess loan interest plus unspecified amounts in lost rental income.

113.    UIG alleged that PA Ridge was seeking to recover those delay damages from UIG, and therefore, UIG was seeking to recover the alleged damages from Shin Da.

114.    Via the GC Contract, however, PA Ridge had waived all consequential damages, including delay damages, thereby making the claims frivolous and fraudulent.  Ex. 1, Document A201-2007, § 15.1.6.

115.     Moreover, UIG did not even contract with Shin Da until *after* the Project was to be completed, and UIG still failed to complete the Project until nearly another year *after* John Wei kicked Shin Da off the Project.

116.     But, in their effort to extort and defraud even more money from Shin Da and Mr. Ren, John Wei, UIG, and PA Ridge began producing more alleged documentation relating to the Project to "support" their putative claims against Shin Da, which only showcased the extent of the Defendants' racketeering criminal enterprise.

117.     Notably, John Wei, UIG, and PA Ridge produced to Shin Da, via email, at least eight (8) invoices from Redevelopment Consultants totaling nearly $300,000 for work performed in bathrooms at the 525 Property, such as "Installation of toilets," "Installation of mirrors," and "Installation of vanity."  A copy of the invoices is attached hereto as Exhibit 15.

118.     But on April 27, 2021, John Wei's, UIG's, and PA Ridge's counsel emphatically represented to the State Court that Redevelopment Consultants was merely a "consultant" and did not perform *any* actual work.  A copy of the transcript is attached hereto as Exhibit 16, at 19:22-19:25 ("Redevelopment Consultants is a consultant.  They didn't do any work on the project.").

119.     Since the Redevelopment Consultants' invoices set forth nearly $300,000 in charges for work performed, including installing toilets, mirrors, and vanities, but Redevelopment Consultants did not perform any actual work as set forth in the invoices, the invoices are fake and fraudulent.

120.     The address used by Redevelopment Consultants on its "invoices" is the same address used by UIG and Wei's Properties, which is also John Wei's and Mika He's residence.

121.     The phone number listed on Redevelopment Consultants' "invoices" is also associated with PA Ridge and used by Mika He.

16

122.    The alleged contract between UIG and Redevelopment Consultants was signed by Mika He as the "owner" of Redevelopment Consultants.  A copy of the contract is attached hereto as Exhibit 17.

123.    Part of the contract with Redevelopment Consultants, titled "Invoice/Contract". which specifies the specific work to be performed, is virtually identical (spelling errors included) to a purported contract between UIG and another entity, allegedly called "INK Construction Management and Development" ("INK").  A copy of the INK contract is attached hereto as Exhibit 18.

124.    The scope of the work to be performed by INK and Redevelopment Consultants is identical, only Redevelopment Consultants was supposedly paid $320,000 to perform the same work INK was paid $230,300 to perform.  *Compare*, Ex. 17 with Ex. 18.

125.    Despite allegedly being the owner of an entity that performed nearly $300,000 worth of work, Mika He gave sworn testimony that she had nothing to do with any of the work performed at the Project and visited the 525 Property only one time, which was at night with her daughter simply to take a look around.  A copy of Mika He's deposition transcript is attached hereto as Exhibit 19, at 50:14-50:19, 53:7-53:23.

126.    Aside from Redevelopment Consultants, UIG and John Wei produced to Shin Da via email invoices from Wei's Properties for work performed on the Project.  A copy of the Wei's Properties invoices is attached hereto as Exhibit 20.

127.    Wei's Properties, however, is, according to John Wei, a property management company, not a construction company or a contractor, whose employees consist of "some part-timers."  Ex. 9, at 15:16-16:18.

128.    Despite being a mere property management company with "some part-time[]" employees, UIG and Wei's Properties entered into a contract worth $5.5 million for Wei's Properties to provide "services and/or materials" for a "[s]prinkler [s]ystem," "[e]lectric service," "[e]lectric rough and finished," "dry wall," and "[p]artition based on the Architectural Plans provided by UIG."  A copy of the contract is attached hereto as Exhibit 21.

129.    Even if Wei's Properties had actually performed any of the work set forth in its alleged contract with UIG, Wei's Properties' performance of that work would be illegal under Philadelphia law as Wei's Properties is not a licensed contractor.

130.    John Wei, PA Ridge, and UIG also transmitted to Shin Da via email invoices for work performed by UIG, the alleged general contractor on the Project.  A copy of the invoices is attached hereto as Exhibit 22.

131.    The majority of the work shown on the invoices for Wei's Properties and UIG also appears on the invoices from Redevelopment Consultants.

132.    Specifically, Wei's Properties submitted an invoice dated April 8, 2019 for $10,000 to "Install bath-vanity on 8th floor."  Ex. 20.

133.    Redevelopment Consultants submitted an invoice dated July 4, 2019, including a charge of $22,900 for "Installation of vanity/kit on 7th, 8th and 9th floor."  Ex. 15.

134.    Meanwhile, UIG charged $7,000 on a March 17, 2019 invoice to install the same vanities on the 9th floor.  Ex. 22.

135.    Wei's Properties created an invoice dated May 31, 2019 for $9,185 to install bathroom mirrors.  Ex. 20.

136.    Redevelopment Consultants charged $24,950 on invoices dated between August 30, 2018 and July 4, 2019 to install those same mirrors.  Ex. 15.

137.   UIG charged $2,728.40 on June 20, 2019 to install toilets on the second floor.  Ex. 22.

138.   Redevelopment Consultants charged $5,000 on July 30, 2018 to install the same toilets.  Ex. 15.

139.   Another contract that was produced was one between UIG and an entity called "FG Construction Managaement [sic]" for $360,000 to provide construction waste collection services. A copy of the contract is attached hereto as Exhibit 23.

140.   Kicking off the clearly fraudulent nature of the contract is the misspelling of "management" on the company's letterhead which comprised the "contract."  Ex. 23.

141.   The Contract was signed on behalf of FG Construction Management by Fang Pantano who, at the time, was a secretary to John Wei.  Ex. 23.

142.   The address for FG Construction Management, 1132 Brandywine Street, Philadelphia, Pennsylvania, is a property owned by another John Wei entity.

143.   In other words, the FG Construction Management contract was another fraudulent contract created by John Wei for purposes of committing bank fraud on Parke Bank.

144.   Mika He, acting at the direction of and on behalf of John Wei and PA Ridge, submitted all of these fraudulent invoices and contracts to Parke Bank in order to inflate the costs of the Project and obtain a loan for at least $18 million despite the true construction costs being significantly less.

145.   Mika He, acting at the direction of and on behalf of John Wei and PA Ridge, submitted all of the invoices and contracts either by email or mail from Philadelphia, Pennsylvania to Parke Bank, which is headquartered in New Jersey.

146.    The transmission of each of the above-mentioned fraudulent invoices and contracts constitutes RICO predicate acts of bank fraud, wire fraud, and/or mail fraud pursuant to 18 U.S.C. § 1344, 18 U.S.C. § 1341, and 18 U.S.C. § 1343

## ALLEGATIONS COMMON TO ALL RICO COUNTS

147.    At all times relevant to this Complaint, Defendants constituted an association-in-fact enterprise, as defined by 18 U.S.C. § 1961(4), which was engaged in, and its activities affected, interstate commerce.

148.    The association-in-fact enterprise was headed by John Wei, who supervised and directed the conduct of the other members of the enterprise, which are the other named defendants in this action.

149.    The primary purpose of the enterprise was to maximize the economic benefits to be obtained by the enterprise by engaging in a scheme to defraud others, including Parke Bank, Plaintiffs and others with which the enterprise dealt by, among other things; inflating construction costs to obtain ever increasing construction loans for John Wei's benefit, stealing the property and materials of Plaintiffs, and extorting Plaintiffs and engaging in other predicate acts in furtherance of the enterprise's common purpose of making money by unlawful means.

150.    In furtherance of its purpose, the enterprise sought, and seeks, to extort and defraud others, including Plaintiffs.

151.    When the successive loans became not enough to continue the financing of the enterprise, Plaintiffs became another target victim of Defendants as Defendants attempted to extort hundreds of thousands, if not millions, of dollars from Plaintiffs through racketeering activities.

152.    The pattern of racketeering engaged in by Defendants involved a scheme to defraud, extort and steal from Plaintiffs and others, began on or before January 1, 2016 and continues to the present day, and includes, among others, the following acts:

a.    On or before January 29, 2016, John Wei, UIG and PA Ridge submitted a loan application containing numerous knowingly false representations and omissions to Parke Bank to finance the renovation of the 525 Property, in violation of 18 U.S.C. § 1344;

b.    In or about January 2019, John Wei, UIG, and PA Ridge, with the assistance of Ying Nan Gai and G&Y, purposely and intentionally stole Mr. Ren's tools that were left at the 525 Property which is in violation of: (1) 18 U.S.C. § 1961(1)(A) as it is a state crime of robbery pursuant to 18 Pa.C.S.A. § 3701(a) and 18 Pa.C.S.A. § 3921(a) as well as 18 Pa.C.S.A. § 3923(a) and a state crime of extortion pursuant to 18 Pa.C.S.A. 3923(a); and (2) 18 U.S.C. § 1951(a);

c.    In or around January 2019, John Wei, UIG, and PA Ridge, with the assistance of Ying Nan Gai and G&Y, purposely and intentionally stole the materials Shin Da had delivered to the 525 Property for installation of the cabinets and countertops and refused to pay for or return the same, which is in violation of: (1) 18 U.S.C. § 1961(1)(A) as it is a state crime of robbery pursuant to 18 Pa.C.S.A. § 3701(a) and 18 Pa.C.S.A. § 3921(a) as well as 18 Pa.C.S.A. § 3923(a) and a state crime of extortion pursuant to 18 Pa.C.S.A. 3923(a); and (2) 18 U.S.C. § 1951(a);

d.    In or around January 2019, John Wei, on behalf of himself, UIG, and PA Ridge, and with the assistance of Ying Nan Gai and G&Y, physically threatened Mr. Ren, Shin Da, and 446 LLC in an effort to prevent them from taking proper legal action in violation of 18 U.S.C.A §§ 1512(a)(2), 1512(b), 1512(c), and 1512(d).

e.     Beginning no later than January 1, 2016 and continuing until at least October 1, 2019, Defendants created fraudulent contracts and invoices, including, but not limited to, the Redevelopment Consultants', Wei's Properties', and G&Y's contracts and invoices, and submitted the same to Parke Bank for the purpose of defrauding Parke Bank into increasing the size of the loan for the Project, each submission of which constituted an act of bank fraud in violation of 18 U.S.C.A. § 1344 and mail fraud in violation of 18 U.S.C.A. § 1341 and/or wire fraud in violation of 18 U.S.C.A. § 1343;

f.     Beginning no later than March 2021 and continuing through at least May 2021, John Wei, UIG, PA Ridge, and Wei's Properties transmitted those same fraudulent contracts and invoices to Shin Da and/or the State Court in violation of 18 U.S.C.A. § 1343;

g.     On or about January 8, 2019, Mika He, on behalf of Wei's Properties and at the direction of John Wei, transmitted the fraudulent and illegal Finder's Fee Agreement (which John Wei and Wei's Properties used false pretenses and fraudulent means to procure in violation of 63 P.S. § 455.303) to Paramount via email, which constitutes wire fraud pursuant to 18 U.S.C.A. § 1343.

153.    Defendants' actions outlined herein constitute a pattern of racketeering activity, are representative of Defendants' pattern and course of practice, and are capable of repetition.

## COUNT I
## RICO VIOLATION (§ 1962(c))
### Plaintiffs v. Defendants

154.    Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

155. Each of the Defendants participated in the conduct outlined herein as set forth above, by, among others, engaging in transactions constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

156. The pattern of racketeering activity in which the Defendants engaged involved numerous specific transactions as described in detail in this Complaint and the accompanying exhibits constituting robbery in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3701(a)); extortion in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3923(a)(6)); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); interference with commerce (18 U.S.C. § 1951); and, obstruction of official proceedings (18 U.S.C. § 1512)—all of which is "racketeering activity" as defined in 18 U.S.C. § 1961(1)(A).

157. As a result of the pattern of racketeering activity, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(a)     An award of compensatory damages in an amount in excess of the jurisdictional amount of $150,000, and trebling of such damages pursuant to 18 U.S.C. § 1964;

(b)     Plaintiffs' reasonable attorneys' fees, expenses, and costs; and

(c)     Such other relief as the Court deems just and proper.

## COUNT II
## RICO VIOLATION (§ 1962(d))
### Plaintiffs v. Defendants

158. Plaintiffs incorporate herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

159.    Defendants did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly and indirectly, in the pattern of racketeering activity set forth herein in violation of 18 U.S.C. § 1962(d).

160.    The pattern of racketeering activity which the Defendants intentionally combined to engage in or otherwise conspired to engage in involved numerous specific transactions as described in detail in this Complaint and the accompanying exhibits constituting robbery in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3701(a)); extortion in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3923(a)(6)); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); interference with commerce (18 U.S.C. § 1951); and, obstruction of official proceedings (18 U.S.C. § 1512)—all of which is "racketeering activity" as defined in 18 U.S.C. § 1961(1)(A).

161.    As a result of the pattern of racketeering activity, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for:

(a)    An award of compensatory damages in an amount in excess of the jurisdictional amount of $150,000, and trebling of such damages pursuant to 18 U.S.C. § 1964;

(b)    Plaintiffs' reasonable attorneys' fees, expenses, and costs; and

(c)    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of twelve (12) on all issues so triable.

KANG HAGGERTY & FETBROYT LLC

By:  */s/David R. Scott*
  Edward T. Kang
  David R. Scott
  Gregory H. Mathews
  *Attorneys for Plaintiffs*

Dated:  July 29, 2021