## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | **CIVIL ACTION** |
| **SHIN DA ENTERPRISES INC., et al.,** | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | No.    21-3384 |
| | : | |
| **WEI XIANG YONG, et al.,** | : | |
| *Defendants.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                  **October 27, 2022**

Plaintiffs Shin Da Enterprises Inc. ("Shin Da"), 446-50 N. 6th Street LLC ("446 LLC"), and Lijian Ren ("Mr. Ren") assert two Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Defendants Wei Xiang Yong a/k/a John Wei ("Mr. Wei"), Jian Mei He ("Ms. He"), UIG Construction, LLC ("UIG"), PA Ridge Associates ("PA Ridge"), Wei's Properties, Inc. ("Wei's Properties")[1], Redevelopment Consultants, LLC[2] ("Redevelopment Consultants"), Ying Nan Gai ("Mr. Gai"), and G&Y Contractor Inc. ("G&Y Contractor").[3] ECF No. 50. Before the Court is Plaintiffs' Motion for Collateral Estoppel which has been fully briefed and argued before the Court. ECF Nos. 124, 130, 133. For the reasons set forth below, the Court will deny Plaintiffs' Motion. An appropriate order will follow.

---

[1] Mr. Wei owns and controls UIG, PA Ridge, and Wei's Properties. ECF No. 50 ¶ 16.
[2] Ms. He, Mr. Wei's wife, owns Redevelopment Consultants. *Id.* ¶¶ 9, 18.
[3] Mr. Gai, Mr. Wei's friend, purports to own G&Y Contractor, though Plaintiffs allege that Mr. Wei uses G&Y Contractors as a shell to engage in fraudulent conduct. *Id.* ¶¶ 19, 77.

## I.    Background

In November 2015, PA Ridge purchased real property on 11th Street in Philadelphia (the

"11th Street Property") with the purpose of renovating the structure into an approximately 100-

unit apartment complex (the "Project").  ECF No. 50 ¶ 25.  PA Ridge then entered an $18

million contract with UIG to serve as the general contractor. *Id.* ¶¶ 27–28. The Project's date of

substantial completion was extended several times from November 30, 2017 to June 30, 2018[4]

and, in turn, the contract amount increased to nearly $25 million, which PA Ridge allegedly

financed via an $18 million (or more) loan from Parke Bank.[5]  *Id.* ¶¶ 29–31.

In August 2018, UIG entered into a subcontract with Shin Da, by and through Mr. Ren,

for the provision and installation of kitchen and bathroom fixtures in ninety-three apartment units

in exchange for $370,000.  *Id.* ¶¶ 33–36. The contract was allegedly orally amended to include

additional materials and work performed, such as sinks, cabinet doorknobs, and plumbing

materials, for an amended price of $532,258.76. *Id.* ¶ 37. The payment schedule provided that

Shin Da would be paid $20,000 upon the execution of the contract, $30,000 on September 5,

2018, $40,000 upon the completion of every seven floors, and the remaining balance upon

completion of the entire subcontract. *Id.* ¶ 38. As required, Shin Da was paid $20,000 at the time

of signing the subcontract. *Id.*  ¶ 42. Shin Da alleges that it quickly provided the materials and

completed installation on a number of floors and was soon owed an additional $240,000. *Id.* ¶

39. Plaintiffs further allege that the $240,000 payment was never made and that when Shin Da

---

[4] One of the modifications was based on the need to modify interior plans to meet Historical Tax Credit
requirements. Accordingly, PA Ridge entered a Change Order with UIG which increased the Project costs
by $6.7 million. ECF Nos. 50-17 at 19, 50-1 at 21–22.
[5] Parke Bank is a Federal Deposit Insurance Corporation insured financial institution headquartered in
New Jersey. ECF No. 50 ¶ 70.

demanded payment, Mr. Wei stated that he did not have any funds to cover the payments. *Id.* ¶ 42–43.

According to Plaintiffs, rather than pay the $240,000 owed, Mr. Wei offered to sell one of his properties, located on 6th Street in Philadelphia (the "6th Street Property"), to Mr. Ren. *Id.* ¶ 44. Mr. Ren and Mr. Wei agreed that a $240,000 credit would be applied to the $2.5 million purchase price of the 6th Street Property. *Id.* Mr. Ren then formed 446 LLC as the intended purchaser of the 6th Street Property. *Id.* ¶ 45. Rather than employ a lawyer to draft the Agreement of Sale, and allegedly to save on legal fees, Mr. Wei's spouse (Ms. He) drafted an agreement written entirely in English. *Id.* ¶¶ 45–48. Although Mr. Ren did not read or speak English, he asserts that he nevertheless signed the Agreement of Sale because he trusted Mr. Wei as a fellow Chinese businessman. *Id.* ¶¶ 47–48.  In furtherance of the sale, Mr. Ren paid a $50,000 deposit on behalf of 446 LLC at the time of signing. *Id.* ¶ 49.

Also on September 21, 2018, Mr. Ren, on behalf of 446 LLC, and Mr. Wei, on behalf of the purported property owners JBZ Realty LLC ("JBZ Realty") and Wei's Properties, executed a supplemental agreement which was written in Chinese. *Id.* ¶ 50–52.  Additionally, Mr. Ren signed a Finder's Fee Agreement which was also written in English and drafted by Ms. He. *Id.* ¶¶ 53–54. Allegedly unbeknownst to Mr. Ren, the Finder's Fee Agreement required that 446 LLC pay a $700,000 fee to Wei's Properties in connection with the sale of the 6th Street Property.  *Id.* ¶¶ 55–56. Plaintiffs allege that the finder's fee was fraudulent under Pennsylvania law because neither Mr. Wei nor Wei's Properties are licensed or registered as real estate brokers or salespersons, as required for receiving real estate commissions. *Id.* ¶¶ 57–59.

On September 28, 2018, Mr. Ren paid Mr. Wei $200,000 allegedly intended as a second payment towards the purchase price of the 6th Street Property.  *Id.* ¶¶ 60–63. It was subsequently

revealed, however, that neither Mr. Wei nor Wei's Properties had an ownership interest in the 6th Street Property; rather, it was owned by JBZ Realty, an entity owned by Mr. Wei's brother, Xiang Feng Wei.[6]  *Id.* ¶¶ 61–62. JBZ Realty, the true owner of the 6th Street Property, contends that it never received the $200,000, or any other funds, from Mr. Wei on Mr. Ren's behalf.  *Id.* ¶ 63. In turn, Mr. Wei and Wei's Properties assert that the $200,000 was payment towards the finder's fee rather than towards the purchase price.  *Id.* ¶ 64.

Before this discrepancy was revealed, 446 LLC applied for financing through Mr. Wei's preferred lender—Paramount Mortgage Resources, Inc. ("Paramount")[7]—in November 2018. *Id.* ¶¶ 65–67. Paramount's owner, Wang Xiaoning, subsequently informed Mr. Ren that 446 LLC had been approved for a loan from Parke Bank. *Id.* ¶ 68–69. Accordingly, Wang Xiaoning indicated that the property sale would close in early January 2019. *Id.* ¶ 68.

Prior to closing, Ms. He, allegedly acting at the direction of Mr. Wei and Wei's Properties, emailed Wang Xiaoning instructing him to include the $500,000 finder's fee allegedly due to Mr. Wei in the closing materials. *Id.* ¶ 70–72. Wang Xiaoning then refused to disburse the loan to 446 LLC unless 446 LLC paid Mr. Wei the purportedly outstanding $500,000.  *Id.* ¶¶ 73, 75. 446 LLC refused to pay the finder's fee and, as a result, was unable to purchase the 6th Street Property. *Id.*

Following 446 LLC's refusal to pay the $500,000, Mr. Wei allegedly removed Shin Da from the Project, did not allow Shin Da to finish its work, and did not pay Shin Da for the materials obtained and labor provided.  *Id.* ¶ 75. Subsequently, in January 2019, Mr. Ren sought

---

[6] Xiang Feng Wei is not a party to this suit, though he is a party to related state court cases.
[7] According to Plaintiffs, Mr. Wei had a pre-existing relationship with Paramount and its owner, Wang Xiaoning. *Id.* ¶¶ 65–67.

to recover tools left behind at the 11th Street Property. *Id.* ¶ 78. When Mr. Ren arrived at the 11th Street Property, Mr. Gai, who was visiting Mr. Wei from out-of-state, allegedly threatened to beat Mr. Ren with a metal pole. *Id.* ¶ 78. Mr. Ren alleges that the tools and materials he stored at the 11th Street Property were never recovered or returned. *Id.* ¶ 80. However, at least some of the cabinets and countertops that Shin Da obtained and left at the 11th Street Property were allegedly installed at the property, despite Shin Da never receiving payment for such materials. *Id.* ¶ 81. Mr. Wei allegedly maintains that such payment was not necessary because 446 LLC did not pay the purported finder's fee. *Id.* ¶ 83.

In approximately January 2019, Mr. Wei allegedly threatened Mr. Ren, ordering him not to seek help from authorities or file any civil action to recover any funds related to the 11th Street or 6th Street Properties. *Id.* ¶ 84. Allegedly, Mr. Wei has friends who are building inspectors and would, at Mr. Wei's direction, draft fraudulent documents asserting that Shin Da's work at the 11th Street Property was deficient. *Id.* UIG would then sue Shin Da asserting deficiently performed work for thousands, or even millions, of dollars. *Id.* Indeed, Defendants maintain that Shin Da failed to perform on the contract and that the work was so deficient that other contractors were used to demolish, remove, rebuild, and redo the work performed by Shin Da. ECF No. 32 at 4.

Additionally, Mr. Wei and Ms. He allegedly submitted fabricated invoices to Parke Bank representing that work actually performed by Shin Da had been performed by Wei's Properties or Redevelopment Consultants throughout 2018 and 2019. ECF No. 50 ¶¶ 147–169. As a result of these representations and on-site inspections performed by construction monitoring company ConTech Services, Inc. ("ConTech"), Parke Bank disbursed loans to Mr. Wei to pay for the work purportedly performed by Shin Da. *Id.* ¶¶ 152–159. However, Plaintiffs assert that rather than

5

paying Shin Da, Mr. Wei directed the funds to Wei's Properties and Redevelopment Consultants. *Id.* ¶ 160.

Additionally, throughout 2019 and in connection with state court litigation, Defendants UIG, PA Ridge, and Mr. Wei allegedly emailed Shin Da invoices from LN Flooring Corp. ("LN Flooring") and G&Y Contractor for which UIG sought to recoup damages from Shin Da. *Id.* ¶ 100. However, the invoices which purport to reflect work done by LN Flooring and G&Y Contractor to fix Shin Da's deficiently performed work, are at least partially duplicative of one another. *Id.* Moreover, Mr. Gai testified that the G&Y Contractor's invoices did not reflect work actually performed but were instead fabricated to justify payments made by UIG to G&Y Contractor for $110,000 for other unrelated work performed at the Project. *Id.* ¶ 103–06. Plaintiffs allege that the fabricated invoices were an attempt to shift the $110,000 expense for work performed by G&Y Contractor from Mr. Wei to Shin Da. *Id.* ¶ 105. Also, in support of state court litigation, Construction Monitors, Inc. ("Construction Monitors") conducted an inspection of the work performed by Shin Da and summarized alleged deficiencies in an "Inspection Report" which Defendants electronically transmitted to Shin Da. ECF No. 50 ¶¶ 89–90. Plaintiffs allege that the report contains fraudulent statements and photographs that do not accurately reflect Shin Da's work. *Id.* ¶¶ 92–99. Additionally, a representative of LN Flooring provided that there were no problems associated with the countertops Shin Da installed and that no modifications were made to Shin Da's work. *Id.* ¶ 95.

Plaintiffs further allege that Mr. Wei's fraudulent activity extends beyond the parties in this case. Specifically, Plaintiffs allege that Mr. Wei uses shell companies to inflate the costs of various real estate construction projects to obtain larger loans and commits tax fraud by under reporting wages paid to employees in cash. *Id.* ¶ 109–110.

## II.      Procedural History

Several lawsuits arose out of the preceding facts. The cases proceeded in parallel and, therefore, the procedural histories of each are relevant to the instant Motion.

### a.   State Court Proceedings

Four state court lawsuits followed. First, in January 2019, 446 LLC sued for: (1) breach of contract against JBZ Realty; (2) fraud and violation of Pennsylvania's Real Estate Licensing and Registration Act ("RELRA") against Wei's Properties and Mr. Wei; and (3) conspiracy and unjust enrichment against JBZ Realty, Xiang Feng Wei, Wei's Properties and Mr. Wei. *446-50 N. 6th St LLC v. JBZ Realty et al.*, Philadelphia Ct. Com. Pl., No. 190100022. UIG subsequently sued Shin Da for breach of contract in June 2019. *UIG Construction, LLC v. Shin Da Enterprises, Inc.*, Philadelphia Ct. Com. Pl., No. 190605116. Also in June 2019, Shin Da sued Mr. Wei and UIG for breach of contract, unjust enrichment, violation of Pennsylvania's Contractor and Subcontractor Payment Act, 73 P.S. § 501, *et seq.* ("CASPA"), and conversion, and PA Ridge under a theory of quantum meruit. *Shin Da Enterprises Inc. v. Wei Xiang Yong a/k/a John Wei, UIG Construction LLC, and PA Ridge Associates LP*, Philadelphia Ct. Com. Pl., No. 190606002. Finally, in July 2019, Shin Da filed a complaint for judgment upon a mechanic's lien against PA Ridge. *Shin Da Enterprises, Inc. v. PA Ridge Associates LP*, Philadelphia Ct. Com. Pl., July 2019 No.: M0001. In November 2019, the three initial actions were consolidated. The consolidated litigation, as well as the mechanics' lien action, are ongoing.

Of relevance here, the Honorable Judge Wright Padilla, presiding over the consolidated state court proceedings, ruled on June 9, 2022 that UIG was barred from alleging deficiencies in Shin Da's work. ECF No. 124, Exh. A. Specifically, CASPA requires that contractors may only withhold payment from subcontractors for allegedly deficient work if written notice for

withholding payment is provided within fourteen days of notice of the work being performed.

Failure to provide such notice "shall constitute a waiver of the basis to withhold payment and

necessitate payment of the subcontractor in full." 73 P.S. § 511(b)(2). Finding that no notice was

provided to Shin Da, Judge Wright Padilla ruled that Defendants were precluded from claiming

or otherwise defending that Shin Da's work was deficiently performed. ECF No. 124, Exh. A.

Judge Wright Padilla further prohibited Defendants from offering any testimony or other

evidence on the issue of Shin Da's allegedly deficient work. *Id.* Defendants moved for

reconsideration, which was denied on July 6, 2022. ECF No. 124, Exh. B.

### b. Federal Proceedings

Plaintiffs brought this RICO action on July 29, 2021.   ECF No. 1.  In both the initial and

the Amended Complaint, Plaintiffs allege that Defendants engaged in a pattern of racketeering

activity in violation of 18 U.S.C. § 1963(c) (Count I) and unlawfully, knowingly, and

intentionally conspired to participate, directly and indirectly, in a pattern of racketeering activity

in violation of 18 U.S.C. § 1962(d) (Count II). ECF Nos. 1, 50. Accordingly, Plaintiffs seek

treble compensatory damages, attorneys' fees, and any other relief this Court deems proper.  *Id.*

On September 22, 2021, Mr. Wei, Ms. He, UIG, PA Ridge, Wei's Properties, and

Redevelopment Consultants (collectively "Wei Defendants") filed a Motion to Dismiss

contending that Plaintiffs failed to allege that: (1) Wei Defendants are separate and distinct from

the alleged RICO enterprise; (2) there was a RICO enterprise distinct from the alleged pattern of

racketeering; (3) Wei Defendants committed any racketeering activities; and (4) there was a

valid conspiracy claim. ECF No. 13-3. After Plaintiffs' Response, Defendants' Reply, and

Plaintiffs' Sur-Reply, the Court denied Wei Defendants' Motion to Dismiss on October 22, 2021.

ECF Nos. 18, 24, 25, 27. Accordingly, Wei Defendants filed an Answer on October 29, 2021.

ECF No. 28. Also on October 29, 2021, Mr. Gai and G&Y Contractors (collectively "Gai Defendants") filed a Motion to Dismiss on the basis that the Complaint contained only vague references to Gai Defendants and virtually no RICO-related allegations which was denied on November 1, 2021. ECF Nos. 29–30. Gai Defendants then filed an Answer on November 15, 2021. ECF No. 31.

A pre-trial conference was held on December 15, 2021 and counsel represented that only limited discovery would be necessary because of the extensive discovery already conducted in state court, yet discovery has not proceeded as smoothly as initially contemplated. First, Plaintiffs served subpoenas on several additional individuals and entities that were not disclosed at the pre-trial conference and Wei Defendants sought a protective order to limit such discovery. ECF No. 37. The Court granted Wei Defendants' Motion on December 23, 2021 and Plaintiffs filed a Motion for Reconsideration on January 4, 2022. ECF Nos. 38, 42. In the Motion, Plaintiffs contended that the additional discovery was warranted because Defendants had intentionally obstructed previous discovery efforts. ECF No. 42 at 9–11. For example, Wei Defendants produced only 614 pages of documents and several hundred photographs which Plaintiffs argued were "implausibly limited for a nearly $25 million construction project." *Id.* at 10. Wei Defendants asserted that they did not possess or control any additional relevant documents. *Id.* Plaintiffs point out, however, that the outstanding documents seemingly exist within Defendants' control because they were referenced in other documents previously produced in state court. *Id.* Further, Plaintiffs asserted that Gai Defendants did not provide a timely response to discovery requests. *Id.* Defendants filed a Response in Opposition the same day. ECF No. 43. The Court granted Plaintiffs' Motion on January 5, 2022. ECF No. 44.

Following a status conference held before the Honorable Magistrate Judge Reid, Plaintiffs filed an Amended Complaint on March 4, 2022. ECF No. 50.  According to later filings, the Amended Complaint was filed after over 1,000 pages of additional discovery were produced in the state court litigation related to PA Ridge's submission of draw requests to Parke Bank for work performed by Shin Da (but allegedly not paid to Shin Da). ECF No. 83-3 at 3–4. Defendants answered the Amended Complaint on March 17, 2022. ECF Nos. 51–52.

On March 18, 2022, Plaintiffs filed a Motion to Compel directed at Paramount for its failure to produce full responses to a previously served subpoena. ECF No. 53. Plaintiffs also maintained that Paramount withheld extensive documents responsive to the subpoena. *Id.* Paramount's Response, filed March 28, 2022, contended that Paramount had searched and reviewed its records and produced all responsive documents. ECF No. 57 at 1–4. In the same filing, Paramount moved for a protective order precluding Plaintiffs from serving duplicative subpoenas and directly contacting represented parties. *Id.* at 4–6. Plaintiffs' Reply maintained that Paramount failed to comply with the subpoena, deleted relevant discoverable communications, and withheld documents. ECF No. 59. Plaintiffs also pointed to a pattern of similar conduct from Defendants and other entities and individuals associated with Defendants. *Id.* at 3–4. Plaintiffs further asserted that they were not serving duplicative subpoenas and that Plaintiffs' counsel immediately took steps to correct its prior unintentional communication with represented parties. *Id.* 4–6. A hearing was held on the Motion to Compel on March 31, 2022, at which Paramount provided approximately 400 additional pages of discovery but also represented that additional documents requested could not be produced because they had been inadvertently deleted to save space on Paramount's server, though Plaintiffs argued that the documents were

10

selectively deleted. Satisfied that Paramount had complied with the subpoena, the Court denied Plaintiffs' and Defendants' motions. ECF No. 61.

The Court also ordered Plaintiffs to file motions to enforce any outstanding subpoenas, which Plaintiffs did on April 7, 2022. ECF Nos. 61, 63–68. A Motion seeking compliance from Architectural Window Corporation was withdrawn on April 12, 2022. ECF No. 81. Following a hearing on April 22, 2022, the Court: (1) granted Plaintiffs' motions and ordered compliance with respect to Construction Monitors[8], INK Construction and Development, LLC, SgRA Architecture, and Shannon Fire Protection, LLC; and (2) denied as moot the motion related to FG Construction Management, LLC[9] ("FG Construction"). ECF No. 89–93.

On April 14, 2022, Plaintiffs filed a Motion to Compel seeking full discovery responses from Wei Defendants. ECF No. 83. In this litigation, Wei Defendants produced only limited organizational documents for PA Ridge and Redevelopment Consultants and provided that all other responsive, non-privileged documents were already produced in connection with the state court litigation. *Id.* at 3. Subsequently, however, Parke Bank produced over 1,000 pages of previously unproduced documents related to PA Ridge and to which various Wei Defendants were parties. *Id.* These documents showed the submission of draw requests under the loan by PA Ridge, which then caused Parke Bank to make payments to various Wei Defendants for work allegedly performed by Shin Da. ECF No. 128 at 10. Additionally, when Ms. He was deposed she expressed surprise that various records related to the loan had not been produced. ECF No. 83 at 4. Specifically, Ms. He testified that she had seen records of funds disbursed under the loan

---

[8] Construction Monitors, through counsel and its corporate designee, asserted that all discoverable material had been transmitted to Plaintiffs prior to the Court's order. ECF Nos. 101, 106, 110.

[9] At the April 2022 hearing, the representative of FG Construction informed the Court that she gave all documents relating to her company to Mr. Wei at his instruction. Plaintiffs noted that Mr. Wei did not transmit any such documents during discovery.

agreement and that PA Ridge possessed "all the draw requests" related to the loan. ECF No. 128 at 10.

In response to Plaintiffs' Motion, Wei Defendants initially opposed because Plaintiffs had not conferred in good faith to resolve the issue before bringing it to the Court's attention. ECF No. 84. The Court directed Wei Defendants to file a substantive response directly addressing the documents produced, the disparity between Ms. He's testimony, the documents not yet produced, and documents produced by other sources, and the destruction or disappearance of any such documents. ECF No. 85. While the Motion to Compel was pending, and before filing a Response, Wei Defendants supplementally produced an additional 7,300 pages of documents on April 21, 2022. ECF No. 128 at 11. In their subsequent Response, Wei Defendants highlighted the additional 7,300 pages of documents were produced and refuted that any relevant documents were destroyed. ECF No. 94. Defendants further provided that the discrepancy between Ms. He's deposition testimony and the documents produced was a result of Ms. He's misunderstanding of the scope of discovery. *Id.* Plaintiffs replied that Wei Defendants' supplemental discovery was still deficient and warranted sanctions because they had not yet produced documents: (1) evidencing any loan applications to Parke Bank, the loan commitment agreement with Parke Bank, and the mortgage note; (2) evidencing communications with Parke Bank regarding loan extensions; (3) evidencing the payments received by UIG, PA Ridge, Wei's Properties and Redevelopment Consultants from Parke Bank; or (4) evidencing the work performed by Wei's Properties and Redevelopment Consultants which was invoiced. ECF No. 95 at 2. Conversely, Wei Defendants asserted in a second supplemental Response that the 7,300 page supplement represented all responsive documents in their possession. ECF No. 96 at 2–3. The Court denied Plaintiffs' Motion to Compel on April 28, 2022. ECF No. 99.

12

During the FG Construction deposition, the company's corporate designee testified that Mr. Wei and Ms. He directed her to provide invoices and payment documents to CohnReznick, an accounting and advisory firm that prepared an Independent Accountant's Compilation Report calculating the amount of Historic Tax Credit available in connection with the Project. ECF No. 108 at 1. Accordingly, Plaintiffs sought documents and the deposition of CohnReznick, which the Court permitted. ECF Nos. 108, 111. Though Plaintiffs purportedly received every responsive document in CohnReznick's possession (2,100 pages of documents), Plaintiffs subsequently informed the Court that key information was not accounted for in the CohnReznick documents.[10]

On May 26, 2022, Plaintiffs' counsel alerted the Court to issues surrounding the deposition of Mr. Wei. ECF No. 112. Specifically, Wei Defendants' counsel objected to a deposition of more than seven hours, despite Mr. Wei's state court deposition lasting five days, largely due to the use of an interpreter. ECF Nos. 113, 116. A hearing was held to resolve the dispute on May 31, 2022 and the Court subsequently ordered that Mr. Wei be made available for two days of depositions with an interpreter. ECF No. 117.

On June 2, 2022, the first day of depositions, Mr. Wei provided that he did very little, if anything, to prepare to testify as the corporate designee of PA Ridge, UIG, Wei's Properties, and non-party United Development, LLC. ECF No. 118 at 1. Plaintiffs' counsel also asserted that Mr. Wei displayed a willful ignorance of relevant documents and information, and took issue with Mr. Wei's position that neither he nor Ms. He had the "intellectual capacity" to understand the loan agreement between PA Ridge and Parke Bank. *Id.* On June 15, 2022, Plaintiffs asked the

---

[10] At a September 21, 2022 hearing, Plaintiffs' counsel pointed to the absence of any records related to the $6.7 million price increase which, presumably, should have been accounted for by Defendants in some manner if it was not provided to CohnReznick.

Court to: (1) compel Mr. Wei to review documents, transcripts, pleadings, and otherwise obtain information necessary to serve as the corporate designee; (2) impose sanctions in the form of attorneys' fees for four hours of the initial deposition; and (3) authorize additional time for the deposition based on Mr. Wei's participation. *Id.* at 3. The Court instructed Plaintiffs' counsel to file a formal motion for sanctions and required that Defense counsel review the obligations of a 30(b)(6) deponent with Mr. Wei. ECF No. 119.

On August 26, 2022, Plaintiffs filed a Motion for Sanctions. ECF No. 128. Plaintiffs again asserted that attorneys' fees should be awarded for the first day of depositions where Wei was not able to provide substantive answers. *Id.* at 28–29. Plaintiffs also asked the Court to order that Wei Defendants be prohibited from taking a position at trial, or introducing any testimony or other evidence, contradicting the positions taken by Wei when he was deposed. *Id.* at 28. Additionally, Plaintiffs moved the Court to provide an adverse jury instruction based on Wei Defendants' alleged spoliation of relevant evidence. *Id.* at 14. Specifically, Plaintiffs maintain that, despite the 7,300 pages of documents eventually produced, Wei Defendants continue to withhold relevant documents in bad faith such as: (1) payments made to Wei's Properties and Redevelopment Consultants on invoices related to the Project, such as payments received from Parke Bank; (2) invoices evidencing additional work purportedly performed representing the $6.7 million difference between the Parke Bank loan and the Change Order related to the Historical Tax Credit; and (3) documents substantiating that UIG, Wei's Properties, and Redevelopment Consultants actually performed the work reflected in related invoices. *Id.* at 14–17. Wei Defendants responded on September 9, 2022 asserting that Plaintiffs' motion should be denied because: (1) the motion was untimely; (2) the Court previously ruled in Wei Defendants' favor on the issue of spoliation when the Court denied Plaintiffs' Motion to Compel

in April 2022; (3) Wei Defendants did not spoil or destroy documents; and (4) Wei Defendants did not fail to properly prepare the Corporate Designee or otherwise engage in sanctionable conduct. ECF No. 131. A related hearing was held before this Court on September 21, 2022.

At the September 21, 2022 hearing the Court also heard arguments on Plaintiffs' Motion for Collateral Estoppel filed August 15, 2022. ECF No. 124. Plaintiffs assert that because summary judgment was granted in state court on the Defendants' failure to comply with CASPA, they are now barred from alleging any deficiencies in Shin Da's work in this case.  ECF No. 124-2 at 5–7. Defendants responded on August 29, 2022, contending that collateral estoppel does not apply because the issues are not identical and because there is no final order on the issue. ECF No. 130-2. Plaintiffs filed a Reply on September 20, 2022 (ECF No. 133) and the Motion is now ripe for consideration.

### III.    Legal Standard

Collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citations omitted). By precluding parties from re-arguing matters that they have already had "full and fair opportunity to litigate," the doctrine "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Sturgell*, 553 U.S. at 892 (internal citations omitted).

State court decisions are given the "same preclusive effect in federal court they would be given in the courts of the rendering state." *In re Motion to Confirm Arb. Award*, 823 F. App'x 113, 115 (3d Cir. 2020) (internal citations omitted); *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984) (same); *see also Trustees of Gen. Assembly of Lord Jesus Christ of*

*Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 750 (E.D. Pa. 2021) (same); *Magoni-Detwiler v. Pennsylvania*, 502 F. Supp. 2d 468, 474 (E.D. Pa. 2007) ("Under the Full Faith and Credit Act, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." (citation omitted)).

Though the issue to be precluded was adjudicated in Pennsylvania state court, and Pennsylvania law is therefore controlling, federal precedent is also persuasive because Pennsylvania law "is not inconsistent with federal decisions on collateral estoppel." *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009). To apply collateral estoppel: (1) the issue decided in the prior adjudication must be identical to the issue presented in the later action; (2) there must be a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior action. *Id.*; *Glasgow, Inc. v. Dept. of Transp.*, 529 A.2d 576, 581 (Pa. Commw. Ct. 1987).

Finally, as the party seeking to collaterally estop Defendants, Plaintiffs bear the burden of proof as to each element. *See Magoni-Detwiler v. Pennsylvania*, 502 F. Supp. 2d 468, 474 (E.D. Pa. 2007) (citing *Chiholm v. Def. Logistics Agency*, 656 F.2d 42, 50 (3d Cir. 1981).

## IV.    Discussion

Defendants assert that the application of collateral estoppel is inappropriate here for two reasons. First, because the issues are not identical and second, because there is no final order on the issue. ECF No. 130 at 10–11. Because Plaintiffs have not met their burden on the threshold

element—that the issues are identical—the Court need not reach Defendants' alternative argument that the state court judgment is not a final order.[11]

### a. The issues are not identical.

Whether the issues are identical for preclusion purposes turns on whether the issue to be precluded is one of fact or law. *Jones v. United Parcel Serv.*, 214 F.3d 402, 406 (3d Cir. 2000) (citing *Rue v. K-Mart Corp.*, 552 Pa. 13, 713 A.2d 82 (1998)). As the Pennsylvania Supreme Court stated: "[a] fact is a fact." *Rue*, 552 Pa. at 85 (noting that the factual issue previously adjudicated in an employment compensation case, whether the appellant misappropriated and consumed a bag of potato chips, was undoubtedly identical to the appellee's affirmative defense in a defamation case that appellee was telling the truth when it told others that appellant misappropriated and consumed the potato chips). Accordingly, previously adjudicated issues which are purely factual will be considered identical for the purposes of collateral estoppel.

Conversely, pure issues of law or mixed questions of law and fact are considered identical only if the two actions promote similar policies. *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1267–68 (3d Cir. 1994) (citing *Odgers v. Commonwealth Unemployment Compensation Bd. of Review*, 514 Pa. 378 (1987)); *see also Bortz v. Workers' Compensation*

---

[11] On brief examination, the Court finds that the state court judgment is final for the purposes of collateral estoppel on the narrow issue of whether Defendants can assert deficient work product as the basis for nonpayment. *See, e.g.*, *Commonwealth v. Holder*, 805 A.2d 499, 502–03 (Pa. 2002) (citing Restatement (Second) of Judgments § 13, cmt g for the position that, for collateral estoppel purposes, "a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect" and that final judgment is not synonymous with appealability); *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996) (same); *Riad v. Wells Fargo Bank N.A.*, 268 A.3d 401 (Pa. Super. 2021) (same). Indeed, the Restatement (Second) of Judgments, which has been relied upon by Pennsylvania courts, provides that strict interpretations of "finality" for the purpose of issue preclusion can cause hardship such as needless duplication of effort and expense in the second action to decide the same issue. Restatement (Second) of Judgments § 13, cmt g. Relitigating whether Defendants can properly defend against non-payment due to deficient work product, or if CASPA bars them from doing so, would be duplicative *if that issue were before this Court.*

*Appeal Board*, 546 Pa. 77, 82 (1996). In other words, the same general legal rules must govern both cases. *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000); *see also* 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Fed'l Prac. & Proc., Jurisdiction and Related Matters* 3d § 4417 (2022) (issues are not identical "if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.").

The state court litigation did not reach the ultimate factual question as to whether Shin Da's work was indeed deficiently performed, so the issue to be precluded is clearly not one of fact. Indeed, the only relevant factual question addressed was whether Defendants provided notice to Shin Da of the deficient work within fourteen days of the work being performed. ECF No. 124, Exh. A. Because Defendants did not, under Pennsylvania law, Defendants are legally barred under CASPA from alleging deficient work as a reason for withholding payment. *Id.* Plaintiffs assert that CASPA applies equally here as it did in the state court proceedings. *Id.* at 6. If this were true, then Defendants would be barred from challenging the quality of Shin Da's work. Plaintiffs' position, however, conflates the procedural requirements of CASPA with some unspecified issue before this Court simply because both purportedly touch upon the same (unadjudicated) facts: Shin Da's work for Wei Defendants.

The state court's application of CASPA is a question of law. The Court therefore turns to the underlying policies of CASPA and RICO. When cases "embody [] different policies and involve different rights," it logically follows that collateral estoppel is inappropriate for issues of law even if there are similar facts raised in each case. *See Odgers*, 514 Pa. at 389. The same logic applies here.

Beginning with the statutes underlying the actions and issues before the state court and here, both deal with distinct policies and rights. CASPA was enacted to provide protection to

contractors and subcontractors and to address related payment and contract disputes. *See, e.g.*, *Lomas v. Kravitz*, 130 A.3d 107, 131 (Pa. Super. 2015). Far and apart from the aims underlying CASPA, Congress enacted RICO to combat organized crime. *See, e.g.*, *U.S. v. Eufrasio*, 935 F.2d 553, 566 (3d Cir. 1991). Though the statute is construed broadly, it is not so broad as to encompass disputes between contractors and subcontractors without more. *See Boyle v. U.S.*, 556 U.S. 938, 950–51 (2009) (listing cases in which the Court expansively applied, or declined to narrow, the scope of RICO).

Moreover, the legal question presented in state court—whether CASPA precludes the Defense from alleging deficient work product—is inconsequential to this RICO action. In the state court proceedings, partial summary judgment was granted to preclude Defendants from alleging Shin Da's work product was deficient as either an affirmative defense to breach of contract and failure to provide payment or as an independent claim. *See* ECF No. 124, Exh. C. It follows that CASPA was employed in the state court proceedings because it governs good faith reasons for withholding payment from subcontractors—the central dispute in the state court proceedings.  73 P.S. § 511. What does not follow, however, is how Defendants' failure to abide by the procedural requirements of CASPA has any bearing on this RICO case.

Plaintiffs admit that the federal and state proceedings turn on different issues. Indeed, Plaintiffs' counsel represented that Plaintiffs could lose in this case and still prevail in the state court proceedings because "the determination the jury would be making . . . [would] be determined on completely different fact[s]." Sept. 21, 2022 Hr'g. Tr. 11:8-10. The Court agrees. The ultimate question in this case is whether Defendants violated RICO by conducting an enterprise through a pattern of racketeering and/or by engaging in a conspiracy to commit substantive violations of RICO. Encompassed within Plaintiffs' RICO claims are the allegations

that Defendants engaged in a pattern of racketeering activity including: (1) robbery in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3701(a); (2) extortion in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3923(a)(6); (3) mail fraud pursuant to 18 U.S.C. § 1341; (4) wire fraud pursuant to 18 U.S.C. § 1343; (5) bank fraud pursuant to 18 U.S.C. § 1344; (6) interference with commerce pursuant to 18 U.S.C. § 1951; and (7) obstruction of official proceedings pursuant to 18 U.S.C. § 1512. ECF No. 50 at 26–27.

However, while the allegations flow from the initial contract dispute, Plaintiffs do not appear to rely on Defendants' failure to pay money owed under the subcontract to establish any of the predicate crimes. Therefore, whether Plaintiff was owed money, and any affirmative defense related to deficient work or the availability thereof under CASPA, are not issues presented by Plaintiffs RICO claims. For this reason, and because of the vastly different policies underlying CASPA and RICO, the question of law decided by Judge Wright Padilla—whether Defendants were precluded from challenging Shin Da's work product as a reason for withholding payment—is not identical to any issue before this Court. Indeed, it is inconsequential.

## V.    Conclusion

For the reasons stated above, Plaintiffs' Motion for Collateral Estoppel (ECF No. 124) will be **DENIED**.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**