IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIN DA ENTERPRISES INC., et al., *Plaintiffs,* | CIVIL ACTION |
| v. | No.   21-3384 |
| WEI XIANG YONG, et al., *Defendants.* | |

### MEMORANDUM

**KENNEY, J.**                                                                November 23, 2022

Plaintiffs Shin Da Enterprises Inc. ("Shin Da"), 446-50 N. 6th Street LLC ("446 LLC"), and Lijian Ren ("Mr. Ren") assert two Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against Defendants Wei Xiang Yong a/k/a John Wei ("Mr. Wei"), Jian Mei He ("Ms. He"), UIG Construction, LLC ("UIG"), PA Ridge Associates ("PA Ridge"), Wei's Properties, Inc. ("Wei's Properties")[1], Redevelopment Consultants, LLC[2] ("Redevelopment Consultants"), Ying Nan Gai ("Mr. Gai"), and G&Y Contractor Inc. ("G&Y Contractor").[3] ECF No. 50. Before the Court is Plaintiffs' Motion for Sanctions against Mr. Wei, UIG, PA Ridge, Wei's Properties, and Redevelopment Consultants (collectively "Wei Defendants"). ECF No. 128. The motion has been fully briefed and argued before the Court. ECF Nos. 128, 131. For the reasons set forth below, the Court will grant Plaintiffs' Motion. An appropriate order will follow.

---

[1] Mr. Wei owns and controls UIG, PA Ridge, and Wei's Properties. ECF No. 50 ¶ 16.
[2] Ms. He, Mr. Wei's wife, owns Redevelopment Consultants. *Id.* ¶¶ 9, 18.
[3] Mr. Gai, Mr. Wei's friend, purports to own G&Y Contractor, though Plaintiffs allege that Mr. Wei uses G&Y Contractors as a shell to engage in fraudulent conduct. *Id.* ¶¶ 19, 77.

1

I. BACKGROUND

This Court's full recitation of the facts of this case is incorporated here. ECF No. 139. To summarize, in November 2015, PA Ridge purchased real property on 11th Street in Philadelphia (the "11th Street Property") with the purpose of renovating the structure into an approximately 100-unit apartment complex (the "Project"). ECF No. 50 ¶ 25. PA Ridge then entered an $18 million contract with UIG to serve as the general contractor, which was financed via a loan from Parke Bank. *Id.* ¶¶ 27–31. In August 2018, UIG entered into a subcontract with Shin Da, by and through Mr. Ren, for the provision and installation of kitchen and bathroom fixtures in ninety-three apartment units in exchange for $370,000. *Id.* ¶¶ 33–36. The contract was allegedly orally amended to include additional materials and work performed, such as sinks, cabinet doorknobs, and plumbing materials, for an amended price of $532,258.76. *Id.* ¶ 37. Plaintiffs allege that the contracted work was completed but that at least $240,000 was never paid. *Id.* ¶ 39.

According to Plaintiffs, rather than pay the $240,000 owed, Mr. Wei offered to sell one of his properties, located on 6th Street in Philadelphia (the "6th Street Property"), to Mr. Ren. *Id.* ¶ 44. Mr. Ren and Mr. Wei agreed that a $240,000 credit would be applied to the $2.5 million purchase price of the 6th Street Property. *Id.* The real estate transaction went awry, and Mr. Ren was allegedly misled into paying a $200,000 which was earmarked as a finder's fee to Mr. Wei rather than a payment towards the purchase price of the property. *Id.* ¶¶ 60–63. The real estate transaction fell through and, allegedly as a result, Mr. Wei removed Shin Da from the Project, did not allow Shin Da to finish its work, and did not pay Shin Da for the materials obtained and labor provided. *Id.* ¶ 75.

Additionally, Mr. Wei and Ms. He allegedly submitted fabricated invoices to Parke Bank representing that work actually performed by Shin Da had been performed by Wei's Properties

or Redevelopment Consultants throughout 2018 and 2019. ECF No. 50 ¶¶ 147–169. As a result of these representations and on-site inspections performed by construction monitoring company ConTech Services, Inc., Parke Bank disbursed loans to Mr. Wei to pay for the work purportedly performed by Shin Da. *Id.* ¶¶ 152–159. However, Plaintiffs assert that rather than paying Shin Da, Mr. Wei directed the funds to Wei's Properties and Redevelopment Consultants. *Id.* ¶ 160.

Additionally, throughout 2019 and in connection with state court litigation, Defendants UIG, PA Ridge, and Mr. Wei allegedly emailed Shin Da invoices from LN Flooring Corp. ("LN Flooring") and G&Y Contractor for which UIG sought to recoup damages from Shin Da. *Id.* ¶ 100. However, the invoices which purport to reflect work done by LN Flooring and G&Y Contractor to fix Shin Da's deficiently performed work, are at least partially duplicative of one another. *Id.* Moreover, Mr. Gai testified that the G&Y Contractor's invoices did not reflect work actually performed but were instead fabricated to justify payments made by UIG to G&Y Contractor for $110,000 for other unrelated work performed at the Project. *Id.* ¶ 103–06. Plaintiffs allege that the fabricated invoices were an attempt to shift the $110,000 expense for work performed by G&Y Contractor from Mr. Wei to Shin Da. *Id.* ¶ 105. Also, in support of state court litigation, Construction Monitors, Inc. ("Construction Monitors") conducted an inspection of the work performed by Shin Da and summarized alleged deficiencies in an "Inspection Report" which Defendants electronically transmitted to Shin Da. ECF No. 50 ¶¶ 89–90. Plaintiffs allege that the report contains fraudulent statements and photographs that do not accurately reflect Shin Da's work. *Id.* ¶¶ 92–99. Additionally, a representative of LN Flooring provided that there were no problems associated with the countertops Shin Da installed and that no modifications were made to Shin Da's work. *Id.* ¶ 95.

Plaintiffs further allege that Mr. Wei's fraudulent activity extends beyond the parties in this case. Specifically, Plaintiffs allege that Mr. Wei uses shell companies to inflate the costs of various real estate construction projects to obtain larger loans and commits tax fraud by under reporting wages paid to employees in cash. *Id.* ¶ 109–110.

## II.     PROCEDURAL HISTORY

Most relevant to the instant motion is the parties' conduct during discovery before this Court and the state court. Discovery in this case has been extensive, and the Court will therefore highlight only the most relevant proceedings and incorporate the full procedural overview recently submitted on the record. ECF No. 139.

Four state court lawsuits arose throughout 2019, three of which were ultimately consolidated. *446-50 N. 6th St LLC v. JBZ Realty et al.*, Philadelphia Ct. Com. Pl., No. 190100022; *UIG Construction, LLC v. Shin Da Enterprises, Inc.*, Philadelphia Ct. Com. Pl., No. 190605116; *Shin Da Enterprises Inc. v. Wei Xiang Yong a/k/a John Wei, UIG Construction LLC, and PA Ridge Associates LP*, Philadelphia Ct. Com. Pl., No. 190606002; *Shin Da Enterprises, Inc. v. PA Ridge Associates LP*, Philadelphia Ct. Com. Pl., July 2019 No.: M0001. Discovery in state court has proceeded in advance of or parallel to this case.

Plaintiffs brought this RICO action on July 29, 2021.  ECF No. 1.  In both the initial and the Amended Complaint, Plaintiffs allege that Defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1963(c) (Count I) and unlawfully, knowingly, and intentionally conspired to participate, directly and indirectly, in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) (Count II). ECF Nos. 1, 50. Accordingly, Plaintiffs seek treble compensatory damages, attorneys' fees, and any other relief this Court deems proper. *Id.*

4

Encompassed within Plaintiffs' RICO claims are the allegations that Defendants engaged in a pattern of racketeering activity including: (1) robbery in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3701(a); (2) extortion in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3923(a)(6); (3) mail fraud pursuant to 18 U.S.C. § 1341; (4) wire fraud pursuant to 18 U.S.C. § 1343; (5) bank fraud pursuant to 18 U.S.C. § 1344; (6) interference with commerce pursuant to 18 U.S.C. § 1951; and (7) obstruction of official proceedings pursuant to 18 U.S.C. § 1512. ECF No. 50 at 26–27.

A pre-trial conference was held before this Court on December 15, 2021 and counsel represented that only limited discovery would be necessary because of the extensive discovery already conducted in state court. Discovery has not gone as planned. First, Plaintiffs served subpoenas on several individuals and entities that were not disclosed at the pre-trial conference and Wei Defendants sought a protective order to limit such discovery. ECF No. 37. The Court granted Wei Defendants' Motion on December 23, 2021 and Plaintiffs filed a Motion for Reconsideration on January 4, 2022. ECF Nos. 38, 42.

In the Motion, Plaintiffs contended that the additional discovery was warranted because Defendants had intentionally obstructed previous discovery efforts. ECF No. 42 at 9–11. For example, Mr. Wei, Ms. He, UIG, PA Ridge, Wei's Properties, and Redevelopment Consultants (collectively "Wei Defendants") produced only 614 pages of documents and several hundred photographs which Plaintiffs argued were "implausibly limited for a nearly $25 million construction project." *Id.* at 10. Wei Defendants asserted that they did not possess or control any additional relevant documents. *Id.* Plaintiffs point out, however, that the outstanding documents seemingly exist within Defendants' control because they were referenced in other documents

5

previously produced in state court. *Id.* Further, Plaintiffs asserted that Mr. Gai and G&Y Contractors (collectively "Gai Defendants") did not provide a timely response to discovery requests. *Id.* Defendants filed a Response in Opposition the same day. ECF No. 43. The Court granted Plaintiffs' Motion on January 5, 2022. ECF No. 44.

On April 14, 2022, Plaintiffs filed a Motion to Compel seeking full discovery responses from Wei Defendants. ECF No. 83. In this litigation, Wei Defendants produced only limited organizational documents for PA Ridge and Redevelopment Consultants and provided that all other responsive, non-privileged documents were already produced in connection with the state court litigation. *Id.* at 3. Subsequently, however, Parke Bank produced over 1,000 pages of previously unproduced documents related to PA Ridge and to which various Wei Defendants were parties. *Id.* These documents showed the submission of draw requests under the loan by PA Ridge, which then caused Parke Bank to make payments to various Wei Defendants for work allegedly performed by Shin Da (but not paid to Shin Da). ECF No. 128-2 at 10. Additionally, when Ms. He was deposed she expressed surprise that various records related to the loan had not been produced. ECF No. 83 at 4. Specifically, Ms. He testified that she had seen records of funds disbursed under the loan agreement and that PA Ridge possessed "all the draw requests" related to the loan. ECF No. 128-2 at 10.

In response to Plaintiffs' Motion, Wei Defendants initially opposed because Plaintiffs had not conferred in good faith to resolve the issue before bringing it to the Court's attention. ECF No. 84. The Court directed Wei Defendants to file a substantive response directly addressing the documents produced, the disparity between Ms. He's testimony, the documents not yet produced, and documents produced by other sources, and the destruction or disappearance of any such documents. ECF No. 85. While the Motion to Compel was pending, and before filing a

Response, Wei Defendants supplementally produced an additional 7,300 pages of documents on April 21, 2022. ECF No. 128-2 at 11. In their subsequent Response, Wei Defendants highlighted the additional 7,300 pages of documents produced and refuted that any relevant documents were destroyed. ECF No. 94. Defendants further provided that the discrepancy between Ms. He's deposition testimony and the documents produced was a result of Ms. He's misunderstanding of the scope of discovery.[4] *Id.*

Plaintiffs replied that Wei Defendants' supplemental discovery was still deficient and warranted sanctions because they had not yet produced documents: (1) evidencing any loan applications to Parke Bank, the loan commitment agreement with Parke Bank, and the mortgage note; (2) evidencing communications with Parke Bank regarding loan extensions; (3) evidencing the payments received by UIG, PA Ridge, Wei's Properties and Redevelopment Consultants from Parke Bank; or (4) evidencing the work performed by Wei's Properties and Redevelopment Consultants which was invoiced. ECF No. 95 at 2. Conversely, Wei Defendants asserted in a second supplemental Response that the 7,300 page supplement represented all responsive documents in their possession. ECF No. 96 at 2–3. The Court denied Plaintiffs' Motion to Compel on April 28, 2022. ECF No. 99.

During the deposition of FG Construction, LLC, the company's corporate designee testified that Mr. Wei and Ms. He directed her to provide invoices and payment documents to CohnReznick, an accounting and advisory firm that prepared an Independent Accountant's Compilation Report calculating the amount of Historic Tax Credit available in connection with the Project. ECF No. 108 at 1. Accordingly, Plaintiffs sought documents from and the deposition

---

[4] Ms. He's misunderstanding of the scope of discovery, as both a named Defendant in this case and as Mr. Wei's wife is perplexing.

of CohnReznick, which the Court permitted. ECF Nos. 108, 111. Though Plaintiffs purportedly received every responsive document in CohnReznick's possession (2,100 pages of documents), Plaintiffs subsequently informed the Court that key information was not accounted for in the CohnReznick production.[5]

Separately, on May 26, 2022, Plaintiffs' counsel alerted the Court to issues surrounding the deposition of Mr. Wei. ECF No. 112. Specifically, Wei Defendants' counsel objected to a deposition of more than seven hours, despite Mr. Wei's state court deposition lasting five days, largely due to the use of an interpreter. ECF Nos. 113, 116. A hearing was held to resolve the dispute on May 31, 2022 and the Court subsequently ordered that Mr. Wei be made available for two days of depositions with an interpreter. ECF No. 117.

On June 2, 2022, the first day of depositions, Mr. Wei provided that he did very little, if anything, to prepare to testify as the corporate designee of PA Ridge, UIG, Wei's Properties, and non-party United Development, LLC. ECF No. 118 at 1. Plaintiffs' counsel also asserted that Mr. Wei displayed a willful ignorance of relevant documents and information, and took issue with Mr. Wei's position that neither he nor his wife, Ms. He, had the "intellectual capacity" to understand the loan agreement between PA Ridge and Parke Bank. *Id.* On June 15, 2022, Plaintiffs asked the Court to: (1) compel Mr. Wei to review documents, transcripts, pleadings, and otherwise obtain information necessary to serve as the corporate designee; (2) impose sanctions in the form of attorneys' fees for four hours of the initial deposition; and (3) authorize additional time for the deposition based on Mr. Wei's participation. *Id.* at 3. The Court instructed

---

[5] At a September 21, 2022 hearing, Plaintiffs' counsel pointed to the absence of any records related to the $6.7 million price increase which, presumably, should have been accounted for by Defendants in some manner if it was not provided to CohnReznick.

Plaintiffs' counsel to file a formal motion for sanctions and required that Defense counsel review the obligations of a 30(b)(6) deponent with Mr. Wei. ECF No. 119.

On August 26, 2022, Plaintiffs filed a Motion for Sanctions. ECF No. 128. Plaintiffs again asserted that attorneys' fees should be awarded for the first day of depositions where Mr. Wei was not able to provide substantive answers. *Id.* at 28–29. Plaintiffs also asked the Court to order that Wei Defendants be prohibited from taking a position at trial, or introducing any testimony or other evidence, contradicting the positions taken by Mr. Wei when he was deposed. *Id.* at 28.

Additionally, Plaintiffs moved the Court to provide an adverse jury instruction based on Wei Defendants' alleged spoliation of relevant evidence. *Id.* at 14. Specifically, Plaintiffs maintain that, despite the 7,300 pages of documents eventually produced, Wei Defendants continue to withhold relevant documents in bad faith such as: (1) payments made to Wei's Properties and Redevelopment Consultants on invoices related to the Project, such as payments received from Parke Bank; (2) invoices evidencing additional work purportedly performed representing the $6.7 million difference between the Parke Bank loan and the Change Order related to the Historical Tax Credit; and (3) documents substantiating that UIG, Wei's Properties, and Redevelopment Consultants actually performed the work reflected in related invoices. *Id.* at 14–17.

Wei Defendants responded on September 9, 2022 asserting that Plaintiffs' motion should be denied because: (1) the motion was untimely; (2) the Court previously ruled in Wei Defendants' favor on the issue of spoliation when the Court denied Plaintiffs' Motion to Compel in April 2022; (3) Wei Defendants did not spoliate or destroy documents; and (4) Wei Defendants did not fail to properly prepare the Corporate Designee or otherwise engage in

9

sanctionable conduct. ECF No. 131. A related hearing was held before this Court on September 21, 2022. The Motion is now ripe for consideration.

### III.     LEGAL STANDARD

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 538 (3d Cir. 2007) (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976)). Accordingly, the Court will grant the sanctions deemed appropriate if it finds that discovery violations have occurred.

Spoliation occurs when (1) the evidence was in the party's control; (2) the evidence is relevant to an issue in the case; (3) there has been actual suppression or withholding of evidence; and (4), the duty to preserve the evidence was reasonably foreseeable to the party. *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). The party seeking a spoliation sanction bears the burden of proving these factors and must refer to particular evidence withheld or suppressed. *E.D. v. Colonial School District*, 2017 WL 1207919, at *7 (E.D. Pa. Mar. 31, 2017); *Malibu Media LLC v. Doe*, 2015 WL 412855, at *4 (E.D. Pa Feb 2, 2015). Further, the finding of bad faith is "pivotal to a spoliation determination" and is decided under the third factor of actual suppression or withholding. *Bull*, 665 F.3d at 79. Bad faith may be inferred from circumstantial evidence. *E.g.*, *Orion Drilling Co., LLC v. EQT Production Co.*, 826 Fed App'x 204, 217 (3d Cir. 2020).

If a 30(b)(6) witness is unable to give useful information, "he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps

through it." *Black Horse Lane Assoc., L.P. v. Dow Chem Corp.*, 228 F. 3d 275, 304 (3d Cir. 2000). Indeed, "producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)." *Id.* When an adequately informed corporate designee is not produced, the Court has "broad discretion in framing a remedy." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 223 (E.D. Pa. 2008). Where a 30(b)(6) deponent fails to appear, the Court may issue a number of sanctions in its discretion but "must" require the delinquent party to pay reasonable expenses, including attorneys' fees, caused by the failure unless the failure was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d)(3).

## IV.    DISCUSSION

For the reasons set forth below, the Court finds that Wei Defendants spoliated relevant documents and provided a 30(b)(6) deponent who essentially failed to appear. Accordingly, the Court will grant the sanctions deemed appropriate.

### a.  Wei Defendants spoliated relevant documents

Upon review of the relevant factors, the evidence produced, and Wei Defendants' conduct throughout discovery, the Court finds that Wei Defendants spoliated relevant evidence and, accordingly, an adverse jury instruction is appropriate. Satisfying the first two elements of spoliation requires minimal discussion. Plaintiffs seek particular evidence in the form of documents related to payments and invoices to which Wei Defendants were party, the loan taken out by Wei Defendants, and work performed for or by Wei Defendants. ECF No. 119 at 14–17; *see E.D.*, 2017 WL 1207919, at *7 (the party seeking a spoliation sanction must refer to particular evidence withheld or suppressed). It is indisputable that the evidence at issue was within Wei Defendants' control and is relevant to Plaintiffs' claims. *Bull*, 665 F.3d at 73. Indeed,

Defendants do not dispute this point. Additionally, these documents are directly related to the cornerstone of Plaintiffs claims: that Defendants engaged in, or conspired to engage in, a pattern of racketeering activity by committing, *inter alia*, mail, wire, and bank fraud related to the financing of and work performed in furtherance of the Project.[6] ECF No. 50 at 26–27. Indeed, Plaintiffs correctly point out that the documents sought are responsive to several of the document requests served on Wei Defendants. ECF No. 128, Exs. 5–7, 10. It is telling that Wei Defendants' Response does not dispute the relevance of the documents at issue. *See generally*, ECF No. 131-1. This must be so because documents related to invoices, payments, contracts, and work performed related to the Project are clearly relevant to Plaintiffs' claims and the incorporated predicate offenses.

Third, the Court finds that there has been actual suppression or withholding of evidence rather than accidental loss or destruction of the evidence. *Bull*, 665 F.3d at 73; *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 442 (E.D. Pa. 2011) (citing *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). Put another way, a finding of bad faith, rather than mere negligence, is pivotal to a spoliation determination and must be established by the party asserting spoliation. *Bull*, 665 F.3d at 77; *First Senior Fin. Grp. LLC v. Watchdog*,

---

[6] To prove a pattern of racketeering activity, Plaintiffs must show evidence of both relatedness and continuity of predicate acts. *H.J. Inc. v. NW Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989). Predicate acts are sufficiently related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Banks v. Wolk*, 918 F.2d 418, 422 (3d Cir. 1990). For the continuity requirement, six factors are relevant: "(1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity." *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989). The predicate crimes alleged are: (1) robbery in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3701(a); (2) extortion in violation of Pennsylvania law punishable by more than one year in prison pursuant to 18 Pa.C.S.A. § 3923(a)(6); (3) mail fraud pursuant to 18 U.S.C. § 1341; (4) wire fraud pursuant to 18 U.S.C. § 1343; (5) bank fraud pursuant to 18 U.S.C. § 1344; (6) interference with commerce pursuant to 18 U.S.C. § 1951; and (7) obstruction of official proceedings pursuant to 18 U.S.C. § 1512. ECF No. 50 at 26–27. Particularly relevant here, Plaintiffs' wire fraud and bank fraud claims are premised on an alleged scheme involving Wei Defendants' fraudulent invoices and contracts. *Id.* ¶¶ 146, 163, 169, 175. Accordingly, evidence related to the Wei Defendants' scheme or showing the relatedness or continuity of the predicate crimes is relevant.

2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014) (noting that destruction of evidence by an automated system in the normal course of business, such as re-recording videotapes, or imperfect measures to preserve evidence from destruction by an automated system do not establish bad faith). Reckless disregard for the consequences of an intentional and conscious destruction of evidence or a party's obfuscation or lying can show bad faith. *Aiello v. Chester Downs, LLC*, 2021 WL 3022438, at *7 (E.D. Pa. July 15, 2021) (citing *First Senior Fin. Grp. LLC*, 2014 WL 1327584, at *7).

The procedural history of this case shows clearly that Wei Defendants have obfuscated at best, and been deceitful at worst, in their production of relevant documents and treatment of other discovery. Asserting in the first instance that all relevant documents had been produced and later, when confronted by 1,000 pages of documents produced by a Parke Bank, producing 7,300 additional pages of documents speaks volumes. Additionally, Plaintiffs sought documents from CohnReznick based on an understanding that Defendants had provided all relevant invoices and payment documents to the accounting firm. ECF No. 108. However, the documents possessed by CohnReznick did not account for the $6.7 million dollar price increase for the loan or other key information. Nevertheless, Defendants assert that *now*, upon the final production of 7,300 additional documents, Plaintiffs have received all relevant documents within their possession. ECF No. 131. Put simply, the Court does not find Defendants' position credible. Defendants' conduct throughout discovery has been consistently evasive and the Court has expended significant resources to induce Wei Defendants' paltry participation in discovery.[7] Documents related to a multi-million-dollar Project must exist, and the search for these documents begins

---

[7] The Court presumes that document production has been frustrated solely by Wei Defendants themselves rather than because of any misconduct on counsel's part.

and ends with Defendants. The Court therefore finds that Defendants have suppressed and withheld evidence and, based on Defendants' conduct throughout all of discovery, and particularly with respect to document production, the Court infers that the suppression was done in bad faith.[8] *Bull*, 665 F.3d at 79; *Orion Drilling Co., LLC*, 826 Fed App'x 204, 217 (3d Cir. 2020) (bad faith may be inferred from circumstantial evidence).

Finally, the duty to preserve the evidence was reasonably foreseeable to Defendants. *Bull*, 665 F.3d at 73. The duty to preserve evidence arises when the party "reasonably should have anticipated litigation." *Aiello v. Chester Downs, LLC*, 2021 WL 3022438, at *7 (E.D. Pa. July 15, 2021) (citing *Bistrian v. Levi*, 448 F. Supp. 3d 354, 469 (E.D. Pa. 2020). Reasonable anticipation of litigation attaches not at the time the lawsuit is filed but at the time the party learns of the events giving rise to the litigation. *Bistrian*, 448 F. Supp. 3d at 469. Additionally, certain kinds of incidents are viewed as being "especially likely" to lead to litigation and therefore "defendants can be expected to anticipate litigation soon after the event itself." *Aiello*, 2021 WL 3022438 at *7. The relationship between the parties and their statements and conduct after the event further inform whether the defendant should have anticipated litigation. *Id.*

The impetus of this case was a six-figure contract dispute between Plaintiffs and Wei Defendants which first arose in 2018. ECF No. 50 ¶ 39. The disputed payments totaled hundreds of thousands of dollars. *Id.* On its face, this dispute was "especially likely" to lead to litigation. This conclusion is further bolstered by the subsequent actions of both parties—a $2.5 million real estate transaction, the finder's fee and materials disputes, and, most tellingly, removing Shin Da from the project and engaging other entities to complete or fix Shin Da's allegedly deficient

---

[8] The Court notes that it is unlikely that the destruction of documents related to the payment of hundreds of thousands of dollars is in the normal course of business. *Cf. First Senior Fin. Grp. LLC v. Watchdog*, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014) (contemplating that the destruction of evidence in the usual course of business, such as by the re-recording of videotapes, does not constitute bad faith).

work. Whether or not litigation is "reasonably foreseeable" is "a flexible standard, and courts exercise discretion in a spoliation inquiry." *Aiello*, 2021 WL 3022438 at *7 (citing *Harrel v. Pathmark*, 2015 WL 803076, at *4 (E.D. Pa. Jan. 26, 2015)). Here, it was reasonably foreseeable that the Project generally, and dealings between the parties more specifically, may have led to litigation. Accordingly, Wei Defendants had a duty to preserve evidence related to the basics of their business dealings: work performed by subcontractors, related invoices, loan disbursements, and payroll.

An adverse inference jury instruction is appropriate because the Court is satisfied that Wei Defendants have spoliated evidence. *See Bull*, 665 F.3d at 74 n.5. The appropriate sanction is determined by weighing: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct in the future." *Int'l Fin. Co. v. Jabali-Jeter*, 2019 WL 2268961, at *15 (E.D. Pa., May 28, 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (1994)).

First, the Wei Defendants appear, at least in some instances, able to access the types of documents requested by Plaintiffs. *See* ECF No. 128-2 at 22. As described above, the Court is convinced that Wei Defendants have acted in bad faith throughout the course of discovery. Second, Plaintiffs have been at least somewhat prejudiced because the documents requested directly relate to their claims and are therefore pertinent to proving their case and otherwise preparing for trial. Finally, an adverse inference instruction is a relatively minor sanction, particularly where the adverse inference is permissible but not required. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (describing more drastic sanctions

15

than an adverse inference jury instruction for the spoliation of evidence). Accordingly, the Court deems it appropriate to inform the jury that it *may*, but is not required to, "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm [them]." *Brewer v. Quaker State Oil Ref. Co.*, 72 F.3d 326, 334 (3d Cir. 1995) (internal citations omitted).

Plaintiffs also seek attorneys' costs and fees associated with Wei Defendant's conduct throughout document production. [9] ECF No. 128-2 at 24. Monetary penalties in the form of fees and costs are appropriate to sanction bad faith spoliation. *See, e.g.*, *Jabali-Jeter, LLC*, 2019 WL 2268961, at *15 (citing *AMG Nat'l Trust Bank v. Ries*, 2011 WL 3099629, at *4 (E.D. Pa. Jul. 22, 2011)). As noted, Wei Defendants engage in multi-million-dollar commercial endeavors and should reasonably expect litigation to arise out of their work. Wei Defendants summarily claim that all documents have been produced despite several key and material documents, which were necessarily in their possession during the standard course of business, remaining unproduced. It is unacceptable that a sophisticated business operation, such as that of Wei Defendants, does not maintain or engage in the good-faith production of documents directly bearing on its business such as invoices and loan documents. The Court finds that because Wei Defendants have approached document production in bad faith, and because Plaintiffs have expended significant resources litigating the issue of document production,[10] an award of attorneys' fees is

---

[9] The Court observes that Plaintiffs' lead attorney bills at a rate of $550 per hour and the associate bills at a rate of $300 per hour. ECF No. 128, Ex. 34. Plaintiffs have delineated the exact time spent by counsel and staff in drafting the instant motion. *Id.* The Court is satisfied that the attorneys' fees described satisfy the "lodestar" method, which requires that the attorneys' billing rate is considered in light of prevailing market rates and that the hours set out were reasonably expended for each of the particular purposes described therein. *Pa. Envtl. Def. Found v. Canon-Mcmillian Sch. Dist.*, 152 F.3d 228, 231-32 (3d Cir. 1998); *Arizona Premium Fin. Co. v. Keystone Surplus Lines*, 2008 WL 11514962, at *2 (E.D. Pa. Jan. 11, 2008) (describing the lodestar method as calculating "the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably expended."). Counsels' submission satisfies these requirements.

[10] The Court notes that Plaintiffs' counsel did not outline other efforts to obtain document production such as additional motions practice, hearings, and conferences with opposing counsel. Nor did Plaintiffs' counsel move the

appropriate. *See id.* Finally, the Court notes that this this sanction may deter Wei Defendants from engaging in similar conduct both in this case and in future litigation. *Id.*

### b. Mr. Wei was an inadequate corporate designee

A corporation must "prepare its designee to be able to give binding answers on its behalf ... [and] perform a reasonable inquiry for information" that is noticed and reasonably available to it. *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 382 (E.D. Pa. 2006). Accordingly, sanctions are appropriate when a corporate designee is unable or unwilling to provide factual information on the entity's behalf. *Black Horse Lane Assoc., L.P.*, 228 F. 3d at 304. The threshold question, therefore, is whether Mr. Wei's performance as a 30(b)(6) deponent was adequate or, conversely, "tantamount to a failure to appear." *Id.*

The Court finds that Mr. Wei did not fulfill his duties as a corporate designee. Throughout Mr. Wei's depositions, he could not (or would not) answer questions on subjects which were properly noticed. ECF No. 128-2 at 21–22 (comparing deposition responses and topics noticed as to the Wei Defendants). For example, Mr. Wei did not recall details surrounding cost increases for components of the Project, administrative business procedures related to the Project, individuals involved in preparing invoices or doing work for the Project, and details regarding the Historical Tax Credit. ECF No. 128, Exs. 32–33. These topics were adequately noticed by Plaintiffs. ECF No. 128-2 at 26–27. Moreover, the questions at issue did not seek details "so minute that a witness could not reasonably be expected to answer them." *See State Farm Mut. Auto. Ins.* 250 F.R.D. at 216. With respect to the June 2, 2022 deposition, Mr. Wei was apparently too busy to review pertinent material in order to adequately testify on behalf

---

Court to impose monetary sanctions as a means of punishment or deterrence rather than solely reflective of attorneys' fees. The Court will therefore award only the fees as briefed, though additional fees may have also been appropriate.

of the corporations. ECF No. 128, Ex. 32. Though he took some steps to prepare for the June 24, 2022 deposition, those steps were still lacking. ECF No. 128, Ex. 33 (providing that he glanced at documents and spoke with his wife for one hour in order to prepare). The Court finds that Mr. Wei was unprepared to answer reasonable questions and therefore the purpose of the deposition was significantly undermined. *See State Farm Mut. Auto. Ins. Co.*, 250 F.R.D. 203, 216–17.

Having found that Mr. Wei did not fulfill his duties, the Court turns to the appropriate sanctions. Rule 37(d) allows the Court to order sanctions if a 30(b)(6) deponent fails to appear, which Mr. Wei did. Fed R. Civ. P. 37(d)(1)(A)(i). Among the permissible sanctions are any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(d)(3). Relevant here is the sanction which prohibits the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). Plaintiff seeks to prohibit the Wei Defendants from taking positions at trial or introducing any testimony or other evidence contrary to the positions taken by the corporate designee during the June 2 and June 24, 2022 depositions, including any claim of refreshed recollection or assertion that Mr. Wei did not understand the questions at the deposition. ECF No. 128-2 at 28. Defendants' counsel agreed with this proposal at the September hearing. Accordingly, because the parties agree and because Mr. Wei was an inadequate 30(b)(6) designee, the Court finds that binding[11] the Wei Defendants to the answers provided by Mr. Wei is an appropriate sanction.

---

[11] Some Courts have discussed the "binding" effect of a 30(b)(6) deposition on corporations. Generally, 30(b)(6) testimony binds a corporation in that it is "deemed to be the testimony of the corporation itself," not "something akin to a judicial admission." *Hanna v. Giant Eagle Inc*, 777 F. App'x 41, 42 (3d Cir. 2019) (citing *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 212 (E.D. Pa. 2008)). Accordingly, it may be contradicted or used for impeachment at trial. *Id.* However, these general rules apply to standard 30(b)(6) depositions, not those in which the corporate designee engages in evasive and sanctionable behavior. As such, the Court appropriately follows Rule 37(d)(3), incorporating Rule 37(b)(2)(A)(ii), in prohibiting Wei Defendants from opposing or otherwise introducing evidence that contradicts the statements made in Mr. Wei's depositions. By doing so, the Court binds Wei Defendants to Mr. Wei's deposition testimony in a manner more akin to a judicial admission.

The Court will not entertain testimony or other evidence contrary to the positions taken at trial, including claims that Mr. Wei's memory has now been refreshed.

Because the Court has imposed sanctions for Mr. Wei's failure fulfill his 30(b)(6) duties, the Court "must" order the delinquent party, the attorney advising that party, or both, to pay "the reasonable expenses, including attorney's fees, unless circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3); *see also State Farm Mut. Auto. Ins. Co.*, 250 F.R.D. at 217. Here, Plaintiffs asked only for partial attorneys' fees consisting of: (i) four hours of fees and costs attributable to the depositions for which the corporate designee was not adequately prepared ($2,780); and (ii) the fees and costs of this sanctions motion ($23,725). ECF No. 128, Ex. 34.

The Court finds nothing unjust about awarding $2,780 in attorneys' fees for the first four hours of the June 2, 2022 deposition. Nor does the Court find that an award of $23,725 for attorneys' fees related to the instant motion would be unjust. Plaintiffs' counsel provided a detailed description of its billing procedures and time spent addressing Wei Defendants' discovery abuses. ECF No. 128, Ex. 34. As described, the Court is satisfied that the fees sought are just pursuant to the "lodestar" method which has been adopted by this Circuit. *Arizona Premium Fin. Co.*, 2008 WL 11514962, at *2. Though the Court notes that the billing summary submitted by Plaintiffs' counsel does not distinguish between time spent drafting the instant motion as it pertains to document production abuses versus deposition shortcomings, such a stratification is not necessary because, as described *supra*, an award of attorneys' fees for the instant motion is appropriate as to document production as well. Indeed, the 45 hours spent between counsel and support staff to review the lengthy record here, draft a motion covering two different forms of discovery abuses, and compile exhibits is entirely standard practice. So too are

19

the rates at which counsel and staff bill. *See generally*, ECF No. 128, Ex. 34 (describing billing rates in this district). Accordingly, the Court finds that attorneys' fees arising out of Mr. Wei's conduct as the 30(b)(6) deponent are appropriate.

V.  **Conclusion**

For the reasons stated above, Plaintiffs' Motion for Sanctions (ECF No. 128) will be **GRANTED**. The Court will award Plaintiffs' attorneys' fees in the sum of $26,505.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**