**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIN DA ENTERPRISES INC., et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **WEI XIANG YONG, et al.,** | : | |
| *Defendants.* | : | **No. 21-cv-03384** |

**MEMORANDUM**

**KENNEY, J.**                                                                                                      **JANUARY 2, 2024**

## I.   INTRODUCTION

In this civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action, Plaintiffs alleged that Defendants orchestrated a years-long fraudulent scheme that involved submitting false invoices on construction projects in order to bilk money from banks, the federal government, and subcontractors. After a seven-day jury trial, the jury found all Defendants liable on one count of a substantive RICO claim, 18 U.S.C. § 1962(c), and one count of a RICO conspiracy claim, § 18 U.S.C. § 1962(d), for a total liability of $1,710,160.80, which was trebled pursuant to the relevant statute to a figure of $5,130,482.40. *See* 18 U.S.C. § 1964(c).

Following their victory, Plaintiffs filed a petition for attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c), requesting a total of $973,610.64. That figure is broken up into $855,660 in attorneys' fees for 2,159.88 hours of work, and $117,950.64 in costs. Defendants objected to the reasonableness of the fees and costs on several grounds. For the following reasons, the Court will grant Plaintiffs' petition in full.

II.   **ATTORNEYS' FEES PETITION**

a.   **The RICO Statute**

A successful RICO plaintiff "*shall* recover . . . the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (emphasis added). Due to the mandatory language of the provision, Plaintiffs are "statutorily entitled to . . . costs and attorney's fees." *Carter Footwear, Inc. v. Graystone World-Wide, Inc.*, No. 3:CV-98-2133, 2007 WL 4443329, at *6 (M.D. Pa. Dec. 18, 2007) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1187 (3d Cir. 1993)). Pursuant to the statute, this Court previously established in the Civil Judgment that attorneys' fees were appropriate in this case. *See* ECF No. 200. "Therefore, this Court need not determine if the Plaintiffs were successful or whether attorneys' fees should be granted but must instead assess what is a 'reasonable fee' in this specific context and whether the requested fees were appropriate," which is done using the lodestar method. *Trickel v. Discount Gold Brokers, Inc.*, No. 3:14-cv-1916, 2022 WL 452407, at *3 (M.D. Pa. Feb. 14, 2022).

b.   **The Lodestar Method**

The lodestar calculation is "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under this well-settled approach, a court determines "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The product is a presumptively reasonable fee. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

In support of a lodestar calculation, the party seeking attorneys' fees has the burden to prove that its request is reasonable by submitting evidence supporting the reasonableness of both the hours it expended throughout the litigation and the rate it applied per hour. *Hensley*, 461 U.S. at 433. Reasonable fees "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S.

886, 895 n.11 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" are reasonable. *Id.* Satisfactory evidence includes affidavits from local, experienced attorneys, as well as generally accepted fee schedules. *See McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 669-70 (E.D. Pa. 2009). The reviewing court may not set attorneys' fees based on a generalized sense of the appropriate rate, "but rather *must* rely upon the record." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (emphasis in original) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996)). In a statutory fee-shifting case, the opposing party has the burden to challenge the reasonableness of the requested fee, and "[t]he district court cannot decrease a fee award based on factors not raised at all by the adverse party." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotation marks and citations omitted). In the absence of "appropriate record evidence" that the rates are improper, "plaintiff[s] must be awarded attorneys' fees at [their] requested rate." *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (internal quotation marks and citation omitted).

### i.  Reasonableness of Hourly Rate

Plaintiffs' counsel provided extensive documentation attesting to the reasonableness of their rates. Plaintiffs provided the resumes of the three attorneys who spent the most time on the case (Edward Kang, David Scott, and Gregory Mathews) along with lengthy descriptions of their experience. Plaintiffs also provided descriptions of the education and experience of associate attorneys, legal assistants, and a paralegal who worked on the case. Additionally, Plaintiffs provided affidavits of two highly experienced attorneys in the Philadelphia area which indicated that the proposed rates were reasonable. *See* ECF No. 211, Exhibits A-B; *see also McGuffey*, 598 F. Supp. 2d at 670 (finding affidavits by local attorneys to be the most relevant evidence as to reasonable rates). Plaintiffs also submitted the Community Legal Services of Philadelphia ("CLS")

Fee Schedule, which "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Nitkin v. Main Line Health*, No. 20-cv-4825, 2022 WL 2651968, at *4 (E.D. Pa. July 8, 2022) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)).[1] The evidence submitted demonstrates that the rates charged by Plaintiffs' attorneys are virtually all well within the ranges set out by CLS and the local attorneys' affidavits.[2] *See* ECF No. 211 at 5. Moreover, Defendants do not contest any of these rates, and accordingly, the Court maintains that the rates are reasonable.[3]

### ii.   Reasonableness of Hours Expended

Next, the Court must examine whether the hours expended on behalf of Plaintiffs in accordance with the issues presented and the complexity of the matter were reasonable. To

---

[1]        The CLS rates were last updated on January 19, 2023. *See* ECF No. 211, Exhibit C.

[2]        Mr. Kang is a Partner with 22 years of experience; his rate was $650 per hour in 2021, $690 per hour in 2022, and is currently $725 per hour. Mr. Mathews is a Partner with 45 years of experience; his rate was $530 per hour in 2021, $550 per hour in 2022, and is currently $575 per hour. Mr. Scott is a Partner with 11 years of experience; his rate was $320 per hour in 2021, $375 per hour in 2022, and is currently $390 per hour. Kelly Lavelle is an associate with 23 years of experience; her rate was $235 per hour in 2021, $300 per hour in 2022, and is currently $325 per hour. Sofia Calabrese is an associate with one year of experience; her rate is $200 per hour. Jennifer Russell is a senior paralegal with over twenty years of experience; her rate is $200 per hour. The legal assistants are college graduates with 0-3 years of experience; their hourly rate was $135 per hour in 2021, $145 in 2022, and is currently $150 per hour.

[3]        Mr. Kang is the only attorney whose rate exceeds the CLS range, which provides for $630-$715 for an attorney with 21-25 years of experience. *See* ECF No. 211, Exhibit C. However, his rates are within the range attested to by the local attorneys. *See id.*, Exhibit A ¶ 8 ("The standard hourly rates for commercial litigation [Partners] in Philadelphia with more than twenty years' experience range from $650 to $800"); Exhibit B ¶ 9 ("The standard hourly rates for commercial litigation Of Counsel or [Partner] attorneys in Philadelphia with over twenty years of experience were between $625 and $805."). These kinds of affidavits are typically more probative than the CLS schedule. *See McGuffey*, 598 F. Supp. 2d at 670. Moreover, Mr. Kang exhibited exceptional skill in guiding his clients to a victory at trial, and Defendants have not contested his rate. For these reasons, the Court will accept Mr. Kang's given rates.

establish that hours expended on legal services were justifiably billed, attorneys are required to record their hours with "sufficient specificity . . . to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996) (internal quotation marks and citations omitted). When the opposing party makes a specific objection, the court must exclude those entries which are "excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (citation omitted). Thus, in reviewing the hours claimed in a fee application, a district court must conduct a "thorough and searching analysis" to identify such charges. *Evans*, 273 F.3d at 362. The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989); *see also id.* at 721 ("the district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party."). "But once the opposing party has made a specific objection, the burden [shifts to] the prevailing party to justify the size of its request." *Berkoben v. Aetna Life Ins. Co.*, No. 2:12-cv-1677, 2014 WL 3565959, at *15 (W.D. Pa. July 18, 2014) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005)).

In support of their petition, Plaintiffs provided an itemized list of invoices for this matter, indicating the billing attorney, their rate, the amount of time spent on each entry, and a description of the work performed in each entry. *See* ECF No. 211, Exhibit H. The entries are generally detailed and specific enough for the Court to ascertain the work performed. The petition also contains receipts for costs incurred by hiring outside vendors. *See id.*, Exhibit I. Plaintiffs' Reply Brief contains additional receipts related to objections raised by Defendants. ECF No. 215, Exhibit 1.

### c.  Defendants' Objections

Defendants request that the petition be denied in its entirety, but object only to four isolated aspects of the petition.[4] First, Defendants argue that Plaintiffs spent an unreasonable amount of time on trial preparation. Second, Defendants object to Plaintiffs recovering fees for entries billed prior to the filing of the Complaint. Third, Defendants allege that Plaintiffs spent an excessive amount of time preparing the fee petition. Fourth, Defendants claim that Plaintiffs' costs are unreasonably high.

### i.  Trial Preparation

Plaintiffs seek compensation for 1,184.38 hours relating to trial preparation, amounting to $478,358.50. *See* ECF No. 211 at 13. This figure represents nearly half of the total fees requested in this petition. Defendants assert that this is an "outrageously excessive" amount of time to have spent on trial preparation. ECF No. 214 at 5. In support of this position, Defendants cite *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, in which the Third Circuit affirmed the denial of a fee petition seeking compensation for 562 hours of trial preparation, calling that number of hours "staggering" and "outrageous." 903 F.3d 396, 401 (3d Cir. 2018). Paraphrasing *Clemens*, Defendants suggest that Plaintiffs overbilled for this category of work, because reaching a figure of 1,184 hours would require Plaintiffs' counsel to have spent 8 hours a day for 45 days straight doing nothing but preparing for trial in this matter—a prospect Defendants evidently find implausible. ECF No. 214 at 5.

Plaintiffs respond to this objection by laying out the time spent by each category of employee on trial preparation and describing the nature of the work. *See* ECF No. 215 at 5.

---

[4]      Defendants must make their objections with a degree of specificity sufficient to provide the fee applicants with "a fair chance to respond and defend their request." *Bell*, 884 F.2d at 720. Aside from the four areas raised in their opposition, Defendants provide no basis for rejecting the remainder of Plaintiffs' petition.

Plaintiffs note that non-attorney staff members spent approximately 213 hours reviewing and preparing over 560 trial exhibits and creating demonstrative exhibits for trial (in total, non-attorney staff billed for 361.28 hours for trial preparation). *Id.* The non-primary attorneys on this matter collectively billed 120.2 hours for trial preparation. *Id.* Finally, the three primary attorneys on this matter billed 172 hours (Mr. Mathews), 331.1 hours (Mr. Scott), and 199.8 hours (Mr. Kang). Subtracting time for attendance at trial, this record suggests that Mr. Scott, who spent more time on this matter than anyone else, worked on this matter for approximately six hours per day in the 45 days leading up to trial. That is eminently reasonable for a complex case with eleven witnesses at which Plaintiffs ultimately prevailed; Defendants' back-of-the-envelope math does not prove otherwise.

Defendants rely solely on *Clemens* for authority that Plaintiffs' time spent on trial preparation was excessive. However, *Clemens* represents an extreme outlier on several levels and is not an adequate comparison to this case. First, *Clemens* was a much simpler case, involving a single bad faith claim in a car insurance case between a single plaintiff and a single defendant. 903 F.3d at 398. The trial *in Clemens* took four days of substantive testimony and saw a total of only five witnesses. *Id.* at 401. By contrast, this case was far more complex, involving three plaintiffs, eight defendants, and the notoriously complicated RICO statute. Although the case involved just two counts, the substantive RICO count's predicate act requirement involves numerous sub-elements, and required unwinding the intricate web spun between Defendant John Wei and his collaborators and companies. The trial lasted seven days and saw eleven witnesses, including two experts. Second, the plaintiffs in *Clemens* "requested an astounding $1,122,156.43 in attorneys' fees, costs, and interest" after receiving a total award of $125,000. *Clemens v. New York Cent.*

*Mut. Fire Ins. Co.*, 264 F. Supp. 3d 618, 626 n.2 (M.D. Pa. 2017). Whereas here, Plaintiffs

requested $973,610.64 after receiving a verdict of $5,130,482.40.

Significantly, the district judge in *Clemens* vociferously criticized the conduct of plaintiff's

lead attorney seeking fees, noting:

> [o]n approximately 75 occasions during the course of the five day
> trial . . . [the attorney] had to be admonished for his conduct which
> included, but was not limited to, his repeated failure to properly
> identify exhibits introduced at trial, his continuous improper use of
> videotaped depositions to show prior consistent (versus
> inconsistent) statements which greatly and unnecessarily lengthened
> the time of trial, and his repeated failure to follow instructions given
> by the court which, on at least one occasion, resulted in the court
> having to threaten [the attorney] with the use of the United States
> Marshals. [The attorney] demonstrated an astonishing lack of
> familiarity with the Federal Rules of Civil Procedure and the Federal
> Rules of Evidence, as well as a complete disrespect for the rulings
> of the court, the likes of which this court has never experienced."

264 F. Supp. 3d at 626 n.4. The passage is worth quoting in full to explain the strong language of

both the district judge and Third Circuit in *Clemens*. They were not facially objecting to 562 hours

spent on trial preparation, but rather 562 hours spent on a simple case, where counsel unnecessarily

lengthened the trial, disrespected the court, and then submitted a fee petition seeking more than

ten times the amount the plaintiff recovered. This audacity was compounded by the *Clemens*

attorney labeling all of the relevant entries as simply "trial prep" or "trial preparation" without any

more detailed description. 264 F. Supp. 3d at 658. Plaintiffs' counsel's conduct in this case could

not be more at odds with the attorney cited in *Clemens*. Plaintiffs' attorneys' skill and high level

of preparedness was evident throughout the entire trial, from their questioning of witnesses to

facility with relevant documents, and their evident mastery of the case. Their billing entries were

clearly labeled, outlining the specific task undertaken, whether that was reviewing depositions and

exhibits, drafting witness examination outlines, or conferring about strategic or legal research questions.

Most importantly, Plaintiffs achieved a complete victory at trial. The attorneys may have spent a great deal of time preparing, but that time paid off as they were prepared for the trial's twists and turns.[5] "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436) (internal quotation marks omitted). The jury found all eight Defendants liable on both counts and awarded Plaintiffs the full amount they had requested. There is no question that Plaintiffs achieved a complete success.

### ii. Pre-Complaint Investigation

Defendants also object to Plaintiffs recovering fees for 31.6 hours spent prior to the filing of the Complaint. Defendants' sole objection is that the time was billed prior to the filing of the Complaint. *See* ECF No. 214 at 2 ("as all of this alleged time occurred more than 2 months prior to the filing of Plaintiffs' Complaint in this matter, Plaintiffs should not be entitled to an award on these fees."). Defendants do not cite any authority for this proposition, and it is incorrect as a matter of law.

The Supreme Court has concluded that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint" are compensable under fee-shifting statutes, providing the "[m]ost obvious examples [of] drafting of the initial pleadings and the work associated with the development of the theory of the case." *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985). The entries contested by Defendants fall squarely within these categories. The entries in March 2021 involve several hours of the attorneys discussing the

---

[5]   The Court agrees with Plaintiffs that Defendants' counsel's attempt to compare his trial preparation time with theirs is unpersuasive, especially since he lost the case.

possibility of bringing a RICO claim amongst themselves and with their clients, as well as legal

research into the viability of bringing such a claim. *See Jimenez v. Best Behav. Healthcare, Inc.*,

No. 18-cv-1003, 2019 WL 6528766, at *6 (E.D. Pa. Dec. 3, 2019) (providing fees for "initial

research, investigation, and client-interview work performed prior to the filing of the complaint.").

The subsequent entries are dedicated to drafting and revising the Complaint itself. As RICO is a

complex area of law, it is altogether reasonable for counsel to spend a substantial amount of time

analyzing the viability of such a claim before taking the leap of filing a lawsuit. Of course, time

spent drafting the Complaint itself is directly related to the lawsuit. In this case, counsel's research

and analysis produced a 25-page initial complaint with 23 exhibits that ultimately resulted in a

complete victory at trial.

### iii.  Fees on Fees

Defendants next object that the 65.2 hours spent by Plaintiffs in preparing their fee petition,

resulting in fees of $24,459.50, are "outrageously excessive." ECF No. 214 at 5. They do not cite

any authority for this proposition, and no argumentation other than that seven individuals

participated in preparing the petition. *Id.*

Plaintiffs are generally entitled to recover for fees incurred in preparing their fee petition,

so long as those fees are reasonable. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*,

297 F.3d 253, 268 (3d Cir. 2002). Courts in this district have regularly granted petitions to

successful plaintiffs for time spent drafting the fee petition in dollar amounts similar to Plaintiffs'

request. *See, e.g.*, *Lugus IP, LLC v. Volvo Car Corp.,* No. 12-cv-2906, 2015 WL 1399175, at *6

(D.N.J. Mar. 26, 2015) (approving $45,130 to prepare fee petition); *Walker v. Verizon

Pennsylvania LLC*, No. 15-cv-4031, 2017 WL 3675384, at *13 (E.D. Pa. Aug. 25, 2017)

(approving $20,125 to prepare fee petition).

In assessing the reasonableness of fees requested for preparing a fee petition, one court granted the equivalent of 204.5 hours spent on a fee petition after considering: (1) the proportion of the work spent by associates and paralegals; (2) the length and complexity of the case; and (3) the quality of the petition itself. *See Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1201 (E.D. Pa. 1990). Here, all three factors militate toward granting the petition. Associates and paralegals performed more than two thirds of the work on the petition, with the remainder spent by partners. This was a complex petition in a complex case, but Plaintiffs submitted clear, organized, and comprehensive work product. The Court does not see any reason (nor do Defendants provide any) that the number of people who worked on the petition is relevant to the reasonableness of the fee.

### iv. Costs

Defendants state that some of the costs requested by Plaintiffs "include charges for hotel rooms for Plaintiffs' attorneys, costs for Uber, costs for 'hosting', costs of legal research (including out of plan charges) and food" and therefore, "the award of costs sought under Plaintiffs' Petition for Attorneys' Fees and Costs is also 'outrageously excessive.'" ECF No. 214 at 5-6. Defendants do not indicate what portion of the proposed costs are attributed to these line-items, nor do they cite any authority or provide any argumentation as to why those particular costs are excessive. They also (incorrectly) imply that the stated categories comprise the totality of Plaintiffs' costs and thus the Court should deny Plaintiffs' petition for costs in full.

Plaintiffs request a total of $117,950.64 in costs. Of this total, Plaintiffs spent $47,452.50 on retaining and supporting expert witnesses, $15,776.13 on transcript services, $8,643.90 on interpreters, $6,500.71 on litigation support, $5,610 on deposition support, $3,835 on process servers, $612.95 on witness fees, $441.81 on postage, $402 on filing fees, and $102.70 on couriers. This totals $89,377.70 in costs that are completely unchallenged by Defendants.

Of Defendants' specific objections, their oblique reference to "hosting" plainly refers to e-discovery services pertaining to hosting documents electronically on their vendor's servers, which are plainly appropriate costs of litigation. *See, e.g.*, *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 615 (E.D. Pa. 2011) (allowing "costs associated with hosting data" since "e-discovery saves costs overall by allowing discovery to be conducted in an efficient and cost-effective manner"). E-discovery costs represent $26,411.60 of Plaintiffs' claimed fee.[6]

Categories of costs associated with attendance at trial and other case activities, such as hotel and transportation costs are "routinely allowed by district courts within this circuit." *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 538 (M.D. Pa. 2008) (collecting cases) (internal quotation marks omitted). The $944.80 in hotel costs at issue were incurred over three nights, so Mr. Scott could stay close to the courthouse and spend time working rather than commuting. *See* ECF No. 215 at 10. Those charges were supported by adequate documentation. *See* ECF No. 215-1 at 1-5. Charges for Ubers and Lyfts incurred for transporting counsel to and from trial amounted to $260.46. The vast majority of these costs were incurred attending trial, and the rest were incurred attending the pretrial conference on September 27, 2023 and a court-ordered hearing on May 16, 2022. These are reasonable rates for reasonable expenses.

Finally, Defendants object to costs requested for "food," although without pointing to any specific entries in Plaintiffs' provided invoices. Upon a thorough review of the invoices, the Court has identified a total of $120.90 taxed by Plaintiffs for costs for food in this matter, comprising $46.38 spent for Mr. Kang and his clients during the settlement conference on January 27, 2022,

---

[6]     Plaintiffs' costs for legal research—just $293.76—are also squarely within the remit of appropriate costs. *See, e.g.*, *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Computer-assisted legal research has been found incidental, if not essential, to successful prosecution of a litigation.").

$45.95 spent for Mr. Kang, Mr. Scott, and Mr. Cavallo during trial preparation on October 11, 2023, and $28.57 spent during Mr. Wei's deposition on June 1, 2022. Courts in this circuit are ambivalent on whether meals are properly reimbursed. *See Watcher*, 559 F. Supp. 2d at 538 (collecting cases both allowing and disallowing meal expenses). Even though Plaintiffs did not fully document these expenses with receipts, the Court will nevertheless permit them since Defendants did not give any specific reason why these costs were unreasonable. *See Central Bucks Sch. Dist. v. Q.M.*, No. 22-cv-1128, 2022 WL 17339037, at *18 n.211 (E.D. Pa. Nov. 29, 2022) (allowing costs for meals when, other than a generalized objection, Defendant did "not specifically object to the award of costs incurred by [Plaintiffs' expert]" and the court noted that it would "not decrease the fee award based on factors not raised by [Defendant].").

## III.     CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiffs' petition in its entirety, and award $973,610.64 in attorneys' fees and costs against Defendants Wei Xiang Yong a/k/a John Wei, Jian Mei He a/k/a Mika He, UIG Construction, LLC, PA Ridge Associates, Wei's Properties, Inc., Redevelopment Consultants, LLC, Ying Nan Gai, and G&Y Contractor Inc.

BY THE COURT:

/s/ Chad F. Kenney

_____
**CHAD F. KENNEY, JUDGE**