**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIN DA ENTERPRISES INC., et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WEI XIANG YONG, et al.,** | : | |
| *Defendants.* | : | **NO. 21-cv-03384** |

**MEMORANDUM**

**KENNEY, J.**                                                                          **March 3, 2025**

Before the Court is Shin Da Enterprises Inc., 446-50 N. 6th St LLC, and Lijian Ren's (together, the "Plaintiffs") Motion for Summary Judgment on Garnishment Directed to Parke Bank (ECF No. 359, "Motion"). For the reasons discussed below, the Motion is **GRANTED**, and judgment is entered in favor of Plaintiffs against Garnishee in the amount of $774,759.05.

## I.    PROCEDURAL BACKGROUND

On October 24, 2023, a jury returned a verdict in favor of the Plaintiffs against Defendants[1] assessing damages in the amount of $1,710,160.80. ECF No. 199. On October 26, 2024, the Court entered an Order for Civil Judgment in Favor of the Plaintiffs for $5,130,482.40, reflecting the damages award and mandatory treble damages under 18 U.S.C. § 1964(c) ("RICO"). ECF No. 200. Plaintiffs were also awarded attorneys fees and costs. ECF No. 307. Plaintiffs proceeded to engage in legal process to execute on the judgment.

---

[1] Defendants of the underlying civil case are Wei Xiang Yong a/k/a John Wei; Jian Mei He; UIG Construction, LLC; PA Ridge Associates; Wei's Properties, Inc.; Redevelopment Consultants, LLC; Ying Nan Gai; and G&Y Contractor Inc (together, the "Defendants").

Parke Bank ("Garnishee") was served a Writ of Execution ("Writ") and Interrogatories in Aid of Execution ("Interrogatories") on January 29, 2024. ECF No. 322. Garnishee responded to the Interrogatories on February 15, 2024, identifying fifteen accounts at Parke Bank owned by Defendants or where they were signatories. ECF 359-6. This included the PA Ridge Associates ("PA Ridge") account ending in 2127 (the "Account"). *Id*. Plaintiffs later received bank statements in discovery that uncovered hundreds of thousands of dollars moved through the Account between February 6, 2024, and June 17, 2024, despite proper service of the Writ attaching the Account. ECF 359-7–359-11.

As a result, Plaintiffs filed the instant Motion on August 1, 2024, alleging Garnishee violated the Writ and Pennsylvania law by allowing PA Ridge to deposit $776,508.00 of garnished money into the Account and then transfer $774,759.05 out of the Account despite the Writ having attached. ECF No. 359 at 5. Garnishee filed its Memorandum of Law in Opposition to the Motion on September 20, 2024 ("Response"). ECF No. 387. In its Response, Garnishee asserted that it was "[not] in possession of or [did not] otherwise transfer[] funds belonging to PA Ridge." *Id.* at 2 (emphasis removed). Rather, Garnishee, in the signed court filing by its attorney David Braverman, alleged that "[i]n fact, Parke Bank was manipulated as part of a fraudulent kiting scheme." *Id.* Plaintiffs filed a Reply in Further Support of the Motion on September 25, 2024. ECF No. 388.

The kiting allegations alarmed the Court, especially in the context of litigation where the Defendants were found liable of a RICO violation and the docket already included over one hundred entries pertaining to the collection of assets. S*ee generally*, ECF Nos. 216-96 & 316-47. Thus, the Court ordered Garnishee to:

provide a status report [] providing: (1) the specific steps Parke Bank has taken regarding the alleged kiting scheme; (2) the specific authorities, including the specific agents, officers, Parke Bank reported the alleged kiting scheme to and the dates of such reports; and (3) the identity of each Parke Bank employee involved with the PA Ridge Associates accounts, the ACH transfers of the alleged kiting scheme, and the remediation of the alleged kiting scheme.

ECF No. 395.

On October 4, 2024, Garnishee filed a "Correction and Status Report" ("Correction"). ECF No. 405. In the Correction, Attorney Braverman provided a mere one-paragraph "Correction of the Record" to clarify an "inaccurate . . . characteriz[ation]" of the transactions that Counsel previously described in a signed filing to the Court as a fraudulent kiting scheme. *Id.* at 1. It is befuddling, if not telling, that counsel still maintains "transactions occurred exactly as set forth in the Response," yet the characterization as a "fraudulent kiting scheme" was dropped after Garnishee's counsel was "educated" after further analysis and internal discussions with bank executives. This begs the unanswered question as to why the bank executives so quickly changed the bank kiting scheme tale told to the Court. "[T]his inaccuracy was not caught until after the Response was filed and while preparing the Status Report" and "Counsel apologize[d] for the confusion that this mistake may have caused."[2] *Id.*

The Court then cancelled the Hearing and Order to Show Cause scheduled to resolve assorted subpoena and garnishment disputes between Plaintiffs and about ten distinct parties. ECF No. 410. Counsel for Plaintiffs and Garnishee filed a joint status report, "request[ing] that the Court

---

[2]The Court notes the seriousness of this "mistake" beyond mere "confusion." Kiting can be prosecuted as a Pennsylvania and federal crime. *See, e.g.*, 18 Pa. C.S. § 4105; 18 U.S.C. § 1344. Counsel, after receiving an extension of a deadline to file Garnishee's Response, ECF No. 375, still did not engage in sufficient internal discussions with his client or analysis of legal precedent before filing Garnishee's Response representing that an alleged a crime had resulted in the evaporation of funds that were to be held as a result of the properly served Writ, ECF No. 387 at 2.

3

proceed as it indicated in its October 7, 2024 Order (ECF No.410) and decide Plaintiffs' pending motion for summary judgment on the filings." ECF No. 419.

After considering the filings made by Plaintiffs and Garnishee to that point, as well as the initial representations of kite scheming as a defense, the Court ordered the Parties to submit a schedule for limited discovery and set a hearing regarding the alleged transfer of assets subject to garnishment so that all sides would have a full understanding of the agreed upon facts and the exact defenses. ECF No. 424. The Parties filed a joint status report that included the limited discovery schedule, ECF No. 425, and the Court approved the schedule in its subsequent order, ECF No. 426.

The Parties completed the limited discovery and submitted supplemental briefs in support and opposition of the Motion. ECF Nos. 448, 449. The parties agreed that an evidentiary hearing was not required to resolve the issues. Argument was held on February 11, 2025, on the Motion, Reply, Response and supplemental briefing. ECF No. 451, 453. Garnishee filed a letter sur-reply on February 11, 2025. ECF No. 452. Accordingly, the Motion is now fully briefed and ripe for determination.

## II.    FACTUAL BACKGROUND

Garnishee was served the Writ and Interrogatories on January 29, 2024. ECF No. 322 at 6. The Writ listed the amount due as $5,130,482.40 and "enjoined [the garnishee] from paying any debt to or for the account of the defendant and delivering any property of the defendant or otherwise disposing thereof," among other restrictions. ECF 255 at 3. The Writ included a notice explaining the statutory exemption of $300. *Id.*

Ginger Giannobile ("Giannobile"), Garnishee's Vice President of Deposit Operations, sent an email on January 30, 2024, with the subject line "FW: Writ of Executions of John Wei" to several Parke Bank employees. ECF No. 449-9. In the email, Giannobile asked "[i]s this something a PA attorney should handle?" and Ralph Gallo, Garnishee's Executive Vice President and Chief Operations Officer, responded that, "We do have an attorney in [sic] involved in the Wei matter. I will forward to the attorney." *Id.*

On February 15, 2024, Giannobile responded to the Interrogatories. ECF No. 449-10. The body of the letter, in its entirety, states, "1. Yes," "2. See attached," and "3. Thru 22. No." *Id.* In the attachment, the available balance of the Account is $48.82, and the last withdrawal listed was on January 8, 2024, in the amount of $206,966.26. *Id.*

According to Garnishee's own policies and confirmed in employee depositions, when Parke Bank receives a writ of garnishment, an employee first checks to see if the debtor has an account at the bank, checks the amount being requested, and sees if that amount is in the debtor's account. ECF No. 449 at 7; ECF No. 449-5 ("Giannobile Dep. Trans.") at 13:23-14:10; 14:17-23. If the funds are in the account, Parke Bank places a hold on those funds. Giannobile Dep. Trans. at 15:3-4. "If there are not enough funds to cover the full amount of the judgment, the hold should be for the entire balance of the account." ECF No. 449-8 at 2. Funds cannot be withdrawn from the account once the hold is placed. Giannobile Dep. Trans. at 17:5-22. A hold would also prevent transfers by ACH. *Id.* at 17:23-18:23.

Parke Bank's Levy/Garnishment Procedure also states that "If [the legal hold] is not done on the day the notice is received and the customer withdrawals [sic] their funds, the bank will be held liable." ECF No. 449-8 at 2. Additionally, the employee is to "[l]og the levy in the Legal Request Tracking Log.xlsx" ("Log"). *Id.*

After confirming that PA Ridge was a customer of Parke Bank and determining that there was only $48.82 in the Account, Giannobile placed **no** hold on the Account or funds since there was less than $300 in the Account. Giannobile Dep. Trans. at 20:3-14, 21-23. The Court confirmed that no hold was placed on the Account at Argument: "[Court]: And there was no hold on the Account? [Attorney for Garnishee]: Correct." ECF No. 453 at 10:2-4. The Log, provided in discovery by Garnishee, includes an entry for the Writ. ECF No. 448-4. The Log columns titled "Date and Time of Hold Place" and "Amount of Hold-Levies rec'd from PA require a no wd lockout as they are ongoing-allow deposits but no wd" are both blank. *Id.* (red text in original).

On February 15, 2024, Giannobile provided the answers to the Interrogatories to the Plaintiffs. ECF No. 449-10. From February 6, 2024, to June 17, 2024,[3] $774,759.05[4] was transferred out of the Account and $776,508.00 was deposited into the Account. ECF No. 449-4. The following is a summary of the ACH transactions, as provided by the Garnishee:

| Date/Time of ACH Transaction | Amount of ACH Transaction | Balance After ACH Trans. | Date/Time of Deposit(s) | Amount of Deposit(s) | Balance After Deposit(s) |
|---|---|---|---|---|---|
| 2/06/24 5:13 AM | $154,922.57 | -$153,992.99 | 2/06/2024 12:35 PM | $155,833.33 | $929.58 |
| 3/06/24 5:09 AM | $154,922.57 | -$154,022.99 | 3/07/2024 11:58 AM | $154,100.00 | $77.01 |

---

[3] The "Note Balance History Account Number [Redacted]2127" ("Balance History"), ECF No. 449-4, lays out the specific payments and deposits, but does not include the exact times provided in other exhibits and the summary, *see, e.g.*, ECF No. 449-3. The Balance History also includes a final withdrawal of $73.10 on June 17, 2024. ECF No. 449-4.

[4] $774,612.85 was transferred in the ACH transfers summarized in the table. ECF No 387 at 3-4. There were also withdrawals of $73.10 on March 15, 2024, and again on June 17, 2024, that bring the total of the transfers out of the Account to $774,759.05. ECF No. 449-4.

| 4/08/24 5:23 AM | $154,922.57 | -$154,948.66 | 4/09/2024 11:08 AM | $154,950.00 | $1.34 |
| 5/06/24 5:37 AM | $154,922.57 | -$154,957.33 | 5/07/2024 10:53 AM | $154,958.00 | $0.67 |
| 6/06/24 5:09 AM | $154,922.57 | -$154,565.00 | 6/06/2024 3:27 PM | $156,666.67 | $2,101.67 |

ECF 387 at 3-4.

Each of the transactions originated as five separate ACH transfers initiated by PNC Bank.[5]

*Id.* at 1. The ACH transfer would then overdraft the Account. *Id.* at 2. Before noon the next day,

PA Ridge would deposit a Citizen's Bank cashier's check into the Account and make smaller

internet deposits to cover the overdraft and the "Insufficient Funds Charge.". ECF No. 387 at 1-2;

ECF No. 387-3; ECF No. 387-8 ¶¶ 14, 18, 22, 23, 24, 28, 29. Garnishee would then "exercise[] its

rights and set-off those deposits against the negative balance." ECF No. 387 at 1-2.[6]

---

[5] A similar transaction also occurred in January prior to service of the Writ. ECF No. 387 at 3.

[6] Garnishee provides extensive descriptions of the ACH transaction process and the way the ACH rules interact with Garnishee policies. *See, e.g.,* ECF No. 387 at 6-7; ECF No. 499 at 8-11. These rules and policies are largely irrelevant to the analysis of if Garnishee violated the Writ. Notably, though, Garnishee's description of the exception process shows that the March, April, and May transactions all would have appeared on one of the daily exception reports that Garnishee generates since the shortfalls were not covered until the day after the effective date. ECF 387 at 6-7. These exception reports are reviewed by a manager or assistant manager of Garnishee rather than being processed automatically. *Id.*

"Each day, there are approximately twenty transactions that appear on an exceptions report which need to be reviewed by management" ECF No. 449 at 10; ECF No. 449-12 ("Marlino Dep. Trans.") at 21:3-14. The manager reviews the report at least twice and personally changes the status of the transfer to "rejected" if there are insufficient funds in the account and then back to "complete" if sufficient funds are deposited. ECF No. 449 at 10-11. At noon the day after the effective date of the ACH transfer, Garnishee would have the opportunity to return a transfer which overdrew the account to recoup funds from the originating party. *Id.* at 11; *see* Giannobile Dep. Trans. at 21:4-11. The manager needs to the reject the transaction by this noon cut-off time or Parke Bank will "take a loss" for the transferred funds if they are not available in the account.

On January 28, 2025, Parke Bank filed a Proof of Claim in the bankruptcy proceeding of John Wei, Case Number 23-13678, through its attorney David Braverman—the same attorney in this dispute. ECF No. 448-5. In the Proof of Claim, Garnishee's claim is for the Account, a total of $774,759.05, and for "[i]ndemnification and setoff (statutory, common law and contract)." *Id.*

## III.    LEGAL STANDARD

### a.  Summary Judgment

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment carries the burden of identifying the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

The court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citations omitted). Crucially, however, a party

---

ECF No. 449 at 11. The Garnishee states that "branch managers do not have discretion about whether to reject or complete transactions on their exception reports—if the funds are in the account by the cutoff, the transaction is not rejected." *Id.* No policy of the Garnishee, ACH rule, or law is cited for this lack of discretion—just the depositions. Giannobile Dep. Trans. at 82:24-83:18; ECF No. 449-13 ("<u>Mason Dep. Trans.</u>") at 28:5-13.

Here, at least three of the transactions—March, April, and May—were reviewed by a manager of Garnishee and not simply processed automatically since these overdrafts would have been on the exceptions report. ECF 387 at 6-7. The March deposit, made mostly by certified check, was processed two minutes before the noon cut-off. *Id.* The manager review and manual change to "complete" would have needed to occur within those two minutes.

opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). Its opposition "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (citing *Celotex*, 477 U.S. at 324). In other words, facts must be viewed in the light most favorable to the opposing party only if the dispute regarding those facts is "genuine." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In such situations, a court must grant summary judgment in favor of the moving party.

### b. Garnishment

In Pennsylvania, "[s]ervice of the writ attaches all property of the defendant in the possession of the garnishee**,** including property that comes into the garnishee's possession after service." *Korman Com. Properties, Inc. v. Furniture.com, LLC*, 81 A.3d 97, 100 (Pa. Super. Ct. 2013) (citing Pa. R. Civ. P. 3111(b)). Pennsylvania law has long required attachment of property that comes into the possession of the Garnishee after the attachment is made. *Sheetz v. Hobensack*, 20 Pa. 412, 414 (1853). "The garnishee is enjoined from paying any debt to or for the account of the judgment defendant and from delivering any attached property of the judgment defendant until such time as the judgment against the judgment defendant is satisfied or the writ is discontinued

or terminated." *In re Szymanski*, 413 B.R. 232, 244 (Bankr. E.D. Pa. 2009) (citing Pa. R. Civ. P. 3111(c)).[7]

A garnishee "is required to exercise a high degree of care in protecting the rights of the other parties until a legal result has been regularly reached." *Shipman v. Seiwell*, 101 Pa. Super. 95, 100 (1931). Further, "a garnishee bank with notice of a judgment order [is prohibited] from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets." *Witco Corp. v. Herzog Bros. Trucking, Inc.*, 863 A.2d 443, 451 (Pa. 2004).

### c. Set-Off

Garnishment of an account interacts with a bank's right to set off a depositor's matured obligation to the bank. The right of set-off has a long history in Pennsylvania law. *See Pa. Nat. Bank & Tr. Co. v. CCNB Bank, N.A.*, 667 A.2d 1151, 1153 (Pa. Super. Ct. 1995) (citing *Aarons v. Pub. Serv. Bldg. & Loan Ass'n,* 178 A. 141 (Pa. 1935)). Set-off extinguishes a depositor's right to an account immediately upon the maturity of the debt owed by the depositor to the bank. *Royal*

---

[7] The relevant portions of Pa. R. Civ. P. 3111 ("Rule 3111"), provide as follows:

(b) Service of the writ upon the garnishee shall attach all property of the defendant which may be attached under these rules which is in the possession of the garnishee. It shall also attach all property of the defendant which may be attached under these rules and which comes into the garnishee's possession thereafter until judgment against the garnishee even though no such property of the defendant was in the garnishee's possession at the time of service.

\* \* \*

(d) Service of the writ upon the garnishee shall also subject the garnishee to the mandate and injunctive orders of the writ restraining the garnishee from paying any debt to or for the account of the defendant and from delivering any property of the defendant which may be attached under these rules to anyone except the sheriff or otherwise disposing thereof until further order of the court or discontinuance or termination of the attachment.

*Bank of Pa. v. Selig*, 644 A.2d 741, 744 (Pa. Super. Ct. 1994). Set-off is a bank's right to self-help and occurs by operation of law. *Id.* The right is not overridden by service of a writ. *Id.*

Certain requirements must be met before a bank has a right of set-off, however. "[T]here must be (1) mutuality of obligation between the depositor and the bank, (2) the funds [] must belong to the depositor, (3) the funds must be deposited in a general [] account, and (4) the debt owed to the bank by the depositor must be matured." *In re Szymanski*, 413 B.R. at 245 (citing *Royal Bank,* 644 A.2d at 744).

Further, "thorough research [] has disclosed no precedent in which a bank was permitted to set off a debt after the account was lawfully garnished by a third party." *In re Petraglia*, 156 B.R. 474, 477 (Bankr. W.D. Pa. 1993). "Expenditures made by a garnishee after the service of an attachment cannot be set off." *Frazier v. Berg*, 159 A. 541, 544 (Pa. 1932) (citing *Pennell v. Grubb*, 13 Pa. 552, 554 (1850)). "If [] [the] garnishment lien pre-dated [the bank's] right of setoff, the latter would be extinguished, as the amount due [on the] judgment exceeded the amounts in the debtor's garnished deposit accounts." *In re Szymanski*, 413 B.R. at 246 (citing *Almi, Inc. v. Dick Corp.,* 375 A.2d 1343, 1348 (Pa. Commw. Ct. 1977); *In re Petraglia,* 156 B.R. at 476; 13 *Standard Pa. Prac. 2d* § 77:56 (2009).

Finally, the right of set-off is not absolute—"[s]etoff will not be permitted when it would be inequitable or contrary to public policy to do so." *In re Szymanski*, 413 B.R. at 242 (quoting *Fed. Deposit Ins. Corp. v. Bank of Am. Nat. Trust and Sav. Ass'n*, 701 F.2d 831, 836 (9th Cir.), *cert. denied*, 464 U.S. 935 (1983)).

## IV.    DISCUSSION

### a.  Summary Judgment

Parties requested the Court rule on the initial Motion for Summary Judgment, Response, and Reply on the filings. ECF No. 429. After clarifying the timing of the ACH transfers and subsequent deposits, the material facts were undisputed. ECF No. 387-8. Concerned by the alleged-then-rescinded kiting scheme and aware of the large amount of money in controversy, the Court ordered limited discovery. ECF Nos. 424, 426. The parties filed supplemental briefing at the close of discovery. ECF No. 448, 449.

The material facts remain undisputed. The Writ was served on the Garnishee on January 29, 2024, ECF No. 359-3 ¶ 7; ECF No. 387-8 ¶ 7, at no point was a hold placed on either the Account or the funds in the Account, ECF No. 453, 10:2-4, the ACH transfers that caused the account to overdraft were made on a monthly basis from February 6, 2024, to June 6, 2024, ECF No. 387-8 ¶¶ 10-31, sufficient funds to cover the overdrafts were deposited by certified check and online deposits each month, *Id.*, and Garnishee used the deposited funds to cover the debt created by the overdraft, *Id.* ¶¶ 11-30. Had a hold been in place, funds could not have been transferred. Giannobile Dep. Trans. at 17:5-22; 17:23-18:23. The funds were not made available to Plaintiffs for collection of the judgment. ECF 359-2 at 7.

Accordingly, as discussed below, after "examin[ing] the evidence of record in the light most favorable to the party opposing summary judgment, and resolv[ing] all reasonable inferences

in that party's favor," the Plaintiffs are entitled to a judgment as a matter of law. *Wishkin*, 476 F.3d at 184.

### b. Garnishment

The Garnishee repeatedly violated the Writ and the plain language of Pennsylvania law requiring garnishment of property that came into the Garnishee's possession after service of the Writ. The Garnishee took minimal efforts to implement the Writ and then violated state law and its own policies on multiple occasions. These violations caused the Account to be used with impunity to transfer PA Ridge's funds. Garnishee did not meet the requirements for automatic set-off and improperly repaid itself rather than turning over the deposits of PA Ridge's funds to the sheriff. Accordingly, judgment is entered in favor of Plaintiffs against Garnishee in the amount of $774,759.05.

### i. Failure to Implement the Writ

When served with the Writ, Garnishee had the legal obligation under Pennsylvania law to attach all property of the Defendant in the possession of the Garnishee, including property that would come into the Garnishee's possession after service of the Writ. Pa. R. Civ. P. 3111(b). Garnishee did not do so. Inexplicably, it placed no hold on any funds in the Account, no hold on the Account itself, and made no meaningful notation on the Log that could have alerted a bank employee of the Writ on the several occasions when a manager was involved with the ACH transfers. The lack of any form of hold or other action by the Garnishee led to repetitive, regular, and predictable use of the Account in violation of the Writ.

Garnishee argues that it places holds on *funds*, and holds are not placed on a garnished *account*. Giannobile Dep. Trans. at 17:10-18:23. Its obligation, it argues, was to look at the

13

Account the date the Writ was received, determine if there were funds that could be attached, and if there were no funds, its obligation ended. Giannobile Dep. Trans. at 21:2-6; 21:10-14. This position is untenable at best. Pennsylvania law is clear: a writ "**shall** also attach all property of the defendant which may . . . come[] into the garnishee's possession thereafter." Pa. R. Civ. P. 3111(b). If Garnishee finds the monitoring requirements that follow from this mandatory provision of Pennsylvania law burdensome, there are legal procedures to terminate the Writ. These processes are determined by Pennsylvania law, not the Garnishee, however. Pa. R. Civ. P. 3111(c). Compliance with Pennsylvania law is not optional.

Garnishee's own policy follows the law and requires bank personnel to "place a hold on the **account**[]," though. ECF No. 448-2 at 2 (emphasis added). "A legal hold must be placed for the full amount of the judgment/levy" and "[i]f there are not enough funds to cover the full amount, the hold should be the entire balance of the account." *Id.* With $48.82 available in the Account on January 29, 2024, and $929.58 available when Giannobile responded to the Interrogatories on February 15, 2024, a hold "should be the entire balance of the account." *Id*. No hold was placed.

ECF No. 453, 10:2-4. Even assuming that holds can only be placed on funds and there would be no possible way to place a hold on an account, Garnishee failed to place a hold on funds.

With no hold in place or other mechanism to appropriately implement the Writ, violations of the Writ ensued.

### ii. Violations of the Writ

After service of the Writ, the Garnishee violated the Writ in several different ways and on multiple occasions.

*First*, upon service of the Writ, there was $48.82 in the Account. ECF 449-4. Between service of the Writ on January 29, 2024, and Giannobile's response to the Writ and Interrogatories on February 15, 2024, Garnishee held funds in the Account in excess of the $300 statutory exemption. Garnishee's own summary of the Account states that there was $929.58 available in the account on February 6, 2024. ECF 387 at 3-4; ECF No. 449-4. The $929.58 available in February without question was over $300 and in the possession of the Garnishee. This balance remained in the Account until the subsequent overdraft in March. *Id.* Garnishee then used these funds to pay part of the March overdraft in violation of the Writ. *Id.*

*Second*, after the February 15, 2024 response, the balance of the Account again exceeded the statutory exemption on June 6, 2024. ECF 387 at 3-4. With $2,101.67 in positive account balance and the Writ still in effect, there were funds available for transfer to the sheriff to begin repayment of the judgment. Failure to freeze these assets and transfer them to the sheriff violated the Writ.

*Third*, and most substantially, between February 6, 2024, and June 6, 2024, PA Ridge deposited $776,508.00 into the Account by certified check and online bank transfer.[8] ECF 387 at 3-4; ECF No. 449-4. $774,759.05 of that money, deposited into the Account and subject to garnishment, was used to repay debts to Parke Bank created when the ACH transfers caused PA Ridge's Account to overdraft and Parke Bank debited the amount from its own funds. ECF No. 449 at 16; ECF No. 449-11 ("Gallo Dep. Trans.") at 73:9-15.

Garnishee highlights that Rule 3111.1(3) does not permit the financial institution as garnishee from attaching "the funds on deposit . . . that do not exceed the amount of the general monetary exemption under 42 Pa.C.S. § 8123 [$300]." ECF No. 449 at 16. Each of these deposits of certified checks, ECF No. 387-3, and the online deposits, ECF No. 387-8 ¶¶ 14, 18, 22, 23, 24, 28, 29, was greater than the $300 statutory exemption.

Garnishee also argues it can ignore Pennsylvania law that a writ "shall also attach all property of the defendant which may . . . come[] into the garnishee's possession thereafter," Pa. R. Civ. P. 3111, since a "writ does not attach to a negative balance," ECF No. 449 at 16. The Writ, properly served on Garnishee on January 29, 2024, attached to a positive balance. ECF 387 at 3. As described above, Garnishee failed to properly implement the Writ from the outset. In doing so, Garnishee set up no protections to prevent itself from essentially lending money to PA Ridge. PA Ridge then deposited its own money into the Account that was subject to the Writ under Rule 3111. The Writ attached to the funds PA Ridge subsequently deposited into the account, not the negative balance of the account created by the overdrafts. Instead of transferring the assets

---

[8] The certified checks were payable to "PA Ridge Associates" and marked "FDO" or "PARKE BANK for Deposit Only." ECF No. 387-3. The provenance of the internet deposit transfers is not provided. ECF No. 449-4.

deposited to the sheriff, Garnishee used PA Ridge's funds to repay itself. By doing so, Garnishee violated the Writ.

### c. Set-Off

Garnishee attempts to rebut its violations of the Writ by shifting the focus from the failure to implement the Writ to the ACH rules and a bank's right to set off a debt. Garnishee argues it did not violate of Rule 3111 and "did nothing wrong" because the Garnishee never transferred PA Ridge's money—it transferred its own funds instead. ECF 449 at 2, 5. PA Ridge then owed Garnishee a debt. *Id.* at 2. Garnishee exercised its right of set-off when deposits were made into the Account. *Id.* Thus, Garnishee argues, PA Ridge never had a positive balance in the Account that was be subject to attachment.

However, neither adherence to the ACH Rules nor the right of set-off excuse the violations of the Writ. Garnishee goes to great lengths to explain how the ACH rules **required** it to effectuate the ACH transfers that caused the overdrafts. ECF No. 387 at 15; ECF No. 449 at 4, 9, 15-16. These arguments ignore an earlier requirement of the Garnishee—to implement the Writ. If Garnishee had appropriately placed a hold on the Account, as required by the law and its own Levy/Garnishment Procedure, or placed a hold on the funds in the Account, as described as the policy in the depositions, no ACH transfers could have been made. Giannobile Dep. Trans. at 17:5-22; 17:23-18:23. Further, Garnishee's own explanation of the exception list process shows that there were multiple opportunities for managers to reverse the transfers. ECF No. 449 at 10-11

Garnishee's right to set-off was not absolute after the transfers were made and a negative balance existed. Certain requirements had to be met before Garnishee had the right set-off. *In re Szymanski*, 413 B.R. at 245. Garnishee did not have the right to set-off since the garnishment

predated the transactions that created the debt to Garnishee. Garnishee only cites caselaw where a debt predates the garnishment for the position that a writ does not override the right to set-off. *Pa. Nat'l Bank*, 667 A.2d at 1154; *Royal Bank* 644 A.2d at 744.[9]

If Garnishee wishes to loan money to an account it knows is subject to garnishment, it is free to do so. But Garnishee placed itself after the Plaintiffs in line to be repaid when the funds of PA Ridge, the very funds subject to garnishment, were deposited in the Account. To avoid doing so, Garnishee should properly follow the law and its policies.[10] Here it set up as self-serving, customized process that helped it as well as the judgment debtor and cut out the Plaintiffs by skirting the law.

Even though Garnishee already set off the debts owed to it by Defendants, albeit inappropriately, it still filed a Proof of Claim in the bankruptcy proceeding of John Wei, Case Number 23-13678. ECF No. 448-5. In the Proof of Claim, Garnishee's claim is for the Account, a total of $774,759.05, and for "[i]ndemnification and setoff (statutory, common law and contract)."

---

[9]If a right to set-off did exist, the Court would still rule that the bank was not entitled to the set-off because it would be contrary to public policy. *In re Szymanski*, 413 B.R. at 242. If the Court allowed set-off, it would be sanctioning the blatant disregard of Pennsylvania law on writs of garnishment. Had PA Ridge deposited the same checks and online transfers in the Account before attempting the ACH transfers, the funds obviously would have been subject to attachment and the right of set-off would not be in question. The Court will not absolve Garnishee simply because the order was inverted. This inversion would not have been possible had a hold been in place. Further, Garnishee received a thirty or thirty-five-dollar fee each time these overdrafts occurred. ECF 449-4.

While the Court does not find it necessary to extend the ruling in *Witco* to the facts of this case, the Court takes seriously Pennsylvania Supreme Court direction that "the public policy of Pennsylvania prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets." 863 A.2d at 451.

[10] Garnishee asserts it "did nothing wrong" and "at all times, . . . Parke Bank adhered to its own policies with respect to the Writ." ECF No. 449 at 5, 19. The Court disagrees.

*Id.* The Court considers it unusual that the Garnishee pursued a debt that it claims did not exist at the time since it was satisfied by set-off.

**V.    CONCLUSION**

Plaintiffs have shown that Garnishee repeatedly violated Pennsylvania law when it used $774,759.05 of deposits made by PA Ridge into the Account to set off debts owed to Garnishee rather than attach the funds as required by the Writ. Accordingly, the Motion is **GRANTED** and judgment is entered in favor of Plaintiffs against Garnishee in the amount of $774,759.05.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**