**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIN DA ENTERPRISES INC., et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WEI XIANG YONG, et al.,** | : | |
| *Defendants.* | : | **NO. 21-cv-03384** |

**<u>MEMORANDUM</u>**

**KENNEY, J.**                                                    **April 29, 2025**

Before the Court is Garnishee Parke Bank's ("<u>Garnishee</u>") Motion for Reconsideration (ECF No. 462, "<u>Motion</u>") of the Court's March 3, 2025 Order and Memorandum (ECF Nos. 456, 457) granting Shin Da Enterprises Inc., 446-50 N. 6th St LLC, and Lijian Ren's (together, the "<u>Plaintiffs</u>") Motion for Summary Judgment on Garnishment Proceedings (ECF No 359). Plaintiffs filed a Response in Opposition to the Motion on April 11, 2025, ECF No. 464, and Garnishee filed a Reply in Support of its Motion on April 24, 2025, ECF No. 465. Accordingly, the Motion is now fully briefed and ripe for consideration. For the reasons discussed below, the Motion is **DENIED**.

Garnishee argues in its Motion that 1) the Court should have considered Parke Bank's rights under the Uniform Commercial Code ("<u>UCC</u>") and PA Ridge's Deposit Account contract, 2) the "failure to implement the Writ" is not by itself a violation of Rule 3111, and 3) the Court should not have held Parke Bank's bankruptcy claim against it. ECF No. 462-1 at 7–12.

Garnishee's arguments obfuscate the crux of the Court's Memorandum and Order: Garnishee ignored a properly served Court-issued Writ, Defendant's money came into Garnishee's

1

possession after the service of the Writ, and then Garnishee used that money to pay itself rather than follow the requirements of Pennsylvania law of garnishment.

**I.      Parke Bank's Rights Under the UCC and Deposit Account Contract**

Garnishee argues that the Court did not properly address its UCC and contractual arguments. ECF No. 462-1 at 7–10. As the Court explained, a right to set-off has long existed in Pennsylvania and interacted with the law of garnishment. ECF 456 at 9–11. Ample caselaw describes the interaction of set-off with a previously existing garnishment. *Id.* at 11. Garnishee cited caselaw prior to the adoption of the UCC revision in Pennsylvania to describe the right of set-off, its priority, and the automatic nature of its effects. ECF No. 449 at 17. Then, Garnishee stated "[t]his common law right to set-off was codified by the legislature when Pennsylvania adopted the Uniform Commercial Code." *Id.* This Court looked to the persuasive authority of *In re Szymanski,* 413 B.R. 232 (Bankr. E.D. Pa. 2009), decided well after the statutory revisions in Pennsylvania law,[1] and held that "Garnishee did not have the right to set-off since the garnishment predated the transactions that created the debt to Garnishee." ECF 456 at 17–18.[2]

---

[1] In 1998, the UCC was "revised to embrace the *Pennsylvania National Bank & Trust* holding." *Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 829 (Pa. 2004). These revisions were adopted by Pennsylvania in 2001. *Id* at 829 n. 26.

[2]      As the Pennsylvania Supreme Court in *Pioneer* reiterated, the right to set-off arises under common law, and the Pennsylvania common law at issue matched the UCC's "present, statutory priority scheme." *Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.,* 855 A.2d 818, 823 n.11, 829 (Pa. 2004). Garnishee argues that "the UCC marked a change from the prior common law understanding of set off 'by giving priority to a bank's right of setoff over a security interest in a deposit account claimed by another creditor' and that 'the bank may set off a debt owed to it by a debtor even though another secured party also has a security interest in the account.' [*Pioneer Com. Funding Corp.,* 855 A.2d at 829 n. 26]." ECF No. 462-1 at 8–9. This footnote parenthetical in *Pioneer* must refer to the impact of the UCC "in most states" but not Pennsylvania because "the UCC was revised to **embrace** the *Pennsylvania National Bank & Trust* holding." *Pioneer Com. Funding Corp.,* 855 A.2d at 829 (emphasis added).

13 Pa.C.S. § 9340 states "a bank may exercise any right of recoupment or set-off," but to exercise a right, the bank must actually have that right. The comment to UCC § 9-340, the Uniform Commission's analogue to 13 Pa.C.S. § 9340, is enlightening: "[t]his section deals with rights of

Further, the Court held:

> [i]f a right to set-off did exist, the Court would still rule that the bank was not entitled to the set-off because it would be contrary to public policy. *In re Szymanski*, 413 B.R. at 242. If the Court allowed set-off, it would be sanctioning the blatant disregard of Pennsylvania law on writs of garnishment. Had PA Ridge deposited the same checks and online transfers in the Account before attempting the ACH transfers, the funds obviously would have been subject to attachment and the right of set-off would not be in question. The Court will not absolve Garnishee simply because the order was inverted. This inversion would not have been possible had a hold been in place. Further, Garnishee received a thirty or thirty-five-dollar fee each time these overdrafts occurred.

ECF 449-4." *Id.* at 18 n. 9.

## II.    "Failure to Implement the Writ"

Garnishee argues "[t]hroughout its memorandum decision, the Court found that Parke had violated Rule 3111 by failing to properly 'implement the Writ' by applying a hold to the Account or putting in place some other preventative measure." ECF No. 462-1 at 10. The Court clearly outlined the actual violations of the Writ. ECF No. 456 at 15–16. Throughout the Memorandum, the Court used sequential language to show that the failure to implement the Writ **led to** violations

---

set-off and recoupment that a bank may have under other law. It does not create a right of set-off or recoupment, nor is it intended to override any limitations or restrictions that other law imposes on the exercise of those rights." U.C.C. § 9-340, com. 3.

As *In re Szymanski* articulated after Pennsylvania adopted the UCC revisions, a garnishment lien that predates a bank's right to set-off would extinguish that right. 413 B.R. at 246. This Court agrees. The UCC does not disrupt a preexisting garnishment since the right to set off a subsequently created debt would be extinguished. Here, set-off would have been proper had the ACH transactions occurred before the service of the Writ, which the Note Balance History shows occurred in January. ECF No. 449-4.

Garnishee's deposit account agreement argument, also tied to the UCC, similarly cannot supplant Pennsylvania's law on writs of garnishments. Garnishee's reading of 13 Pa.C.S. § 9341 would allow two parties to rewrite the rights of **other** parties under Pennsylvania law by simply entering into an agreement together.

Neither of these arguments undermine the Court's ruling that "Garnishee did not have the right to set-off since the garnishment predated the transactions that created the debt to Garnishee." ECF 456 at 17-18. Garnishee's interpretation of the UCC and contractual rights would contravene "the public policy of Pennsylvania [that] prohibits a garnishee bank with notice of a judgment order from engaging in transactions with the judgment debtor that it knows or should know will facilitate the judgment debtor in attempts to avoid the lawful garnishment of its assets." *Witco Corp. v. Herzog Bros. Trucking*, 863 A.2d 443, 451 (Pa. 2004).

of Rule 3111. *See e.g.* ECF No. 456 at 13 ("The lack of any form of hold or other action by the Garnishee **led to** repetitive, regular, and predictable use of the Account in violation of the Writ.") (emphasis added); *id.* at 13 ("The Garnishee took minimal efforts to implement the Writ **and then** violated state law and its own policies on multiple occasions.") (emphasis added); *id.* at 15 ("With no hold in place or other mechanism to appropriately implement the Writ, violations of the Writ **ensued**.") (emphasis added). Moreover, the structure of the Memorandum, broken into subheadings for clarity, clearly delineates "i. Failure to Implement the Writ" from the subsequent "ii. Violations of the Writ." *Id.* at 14-15.

### III.    Parke Bank's Bankruptcy Claim

Garnishee argues "[t]he Court's ruling was based, in part, on the fact that Parke filed a claim in John Wei's bankruptcy proceedings. *See* Memorandum at 18-19 ('The Court considers it unusual that Garnishee pursued debt that it claims did not exist at the time since it was satisfied by set-off.')." ECF No. 462-1 at 11. The Court provided its reasoning for holding Garnishee's actions violated the Writ and explained why a right to set-off did not exist. ECF No. 456 at 15–17.

The Court's decision did not turn on its discussion of the bankruptcy claim. The Court remarked on the bankruptcy claim to highlight inconsistent litigating positions where the first substantive filing by the Garnishee in response to the Motion for Summary Judgment on Garnishment Proceedings (ECF No 359) alleged a "fraudulent kiting scheme." ECF No. 387 at 2. It was only the Court's concern and intervention, ECF No. 395, that caused Garnishee to file its "Correction and Status Report," ECF No. 405.

As the Memorandum makes clear, the Court held Garnishee repeatedly violated Pennsylvania law when it used $774,759.05 of deposits made by PA Ridge into the Account to set

off debts created after service of the Writ rather than attach the funds as required by the Writ. ECF No. 456 at 19. A subsequent bankruptcy claim did not factor into this analysis.

**IV.     CONCLUSION**

Accordingly, the Motion for Reconsideration (ECF No. 462) is **DENIED**.

**BY THE COURT:**


**/s/ Chad F. Kenney**
_____

**CHAD F. KENNEY, JUDGE**